25-mc-1479

VITALIANO, J.

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

vs.                                    Case No. 00-CR-00515 (JG)

CARLOS ECHEVERRY,
RAYMOND GUTIERREZ,
GUSTAVO MARTINEZ,
and CARLOS RUIZ.

        Defendants.

_____/

## VERIFIED THIRD-PARTY MOTION TO INTERVENE AND UNSEAL

Third-Party Joaquin Mario Valencia-Trujillo (Third Party), proceeding *pro se*,

moves to intervene and unseal[1] the filings in this 25-year old case pertaining to four

(4) codefendants - Carlos Echeverry (Echeverry), Raymond Gutierrez (Gutierrez),

Gustavo Martinez (Martinez), and Carlos Ruiz (Ruiz) - who entered guilty pleas and

fully cooperated with the government regarding a conspiracy to possess more than a

metric ton of cocaine with intent to distribute on May 1, 2000. The Third Party also

moves for disclosure of portions of the Pre-Sentence Investigation Reports (PSRs)

for each of these codefendants based on a special need explained herein.  In support

of this motion to intervene and unseal, the Third Party respectfully avers as follows:

---

[1] *In re Sealed Search Warrants*, 2008 U.S. Dist. LEXIS 107711, *1, fn.1 (N.D.N.Y.)
(court construing a third party's letter motion as a motion to intervene and unseal).
The cases of these four codefendants were filed in 2000 and were terminated in 2001.

1

1. The docket sheet available on Pacer for Martinez's case, *see* Exhibit A, only allows access to the transcript of his sentencing held on May 18, 2001. *See* Exhibit B. No other case documents are available on Pacer.

2. The transcript shows that Martinez cooperated with the government. *See* Exhibit B at p.5 ("Your Honor, the government's letter details the manner in which Mr. Martinez's cooperation was useful to the government.").

3. As a result of his cooperation, Martinez received a 40-month term, below the mandatory minimum and his guideline range. *See* Exhibit B at p.8 ("COURT: Your cooperation accomplished some significant results for the government. So, from your guideline range of 135 to 168 months, I am departing downward to *a sentence of 40 months*") (emphasis added).

4. The docket sheet available on Pacer for Echeverry's case, *see* Exhibit C, does not allow access to any documents, but it reveals that he received a *46-month term*, below the mandatory minimum and his guideline range, which sentence could only be imposed as a result of his cooperation.

5. The docket sheet available on Pacer for Gutierrez's case, *see* Exhibit D, also does not allow access to any documents, but it reveals that he received a *44-month term*, below the mandatory minimum and his guideline range, which sentence could only be imposed as a result of his cooperation.

6. The docket sheet available on Pacer for Ruiz's case, *see* Exhibit E, also does not allow access to any documents, but it reveals that he received a *62-month term*, below the mandatory minimum and his guideline range, which sentence could only be imposed as a result of his cooperation.

7. The cases of these four codefendants were *terminated almost a quarter of a century ago*, but "SEALED ENDORSED ORDERS" were entered in the dockets of all four codefendants in mid-May 2006, more than three years after the last activity in their cases in 2003, as can be gleaned from review of their case dockets. *See* Exhibit A (Doc. 262 (05/17/2006) and Doc. 264 (05/19/2006)); Exhibit C (same); Exhibit D (same); Exhibit E (same). These "SEALED ENDORSED ORDERS" were entered *weeks before the the Third Party's trial was initially scheduled to commence in June 2006*.

2

8. The Third Party was also indicted by a grand jury sitting in Tampa, Florida for the same conspiracy to possess the same load of cocaine with the intent to distribute on May 1, 2000 in *United States v. Valencia-Trujillo*, Case No. 02-CR-329-T-17-EAJ (M.D.Fla.).

9. The Third Party did not take the stand during his jury trial held in *2006*, but he avers that he is ***actually innocent*** of any involvement whatsoever with the May 1, 2000 cocaine load, notwithstanding the guilty verdict.

10. The Third Party avers that, years after his jury trial, he obtained withheld evidence that proves that his conviction was tainted by perjured testimony given by the "star witness" as to the May 1, 2000 conspiracy, which the government knew was perjured, but failed to correct. *See United States v. Alzate*, 47 F.3d 1103, 1110 (11th Cir. 1995) (where prosecutor knowingly used perjured testimony at trial, *or* failed to correct what he subsequently learned was false testimony, the falsehood will be deemed to be material "if there is any reasonable likelihood that the false testimony ***could have*** affected the judgment of the jury.") (*quoting United States v. Agurs*, 427 U.S. 97, 103 (1976) (emphasis added); *accord Giglio v. United States*, 405 U.S. 150, 154 (1972); *Napue v. Illinois*, 360 U.S. 264, 271 (1959)).

11. The "star witness," Ramon O. Mejia, testified at the Third Party's trial that he only used one Johnny Cano (a/k/a Santi, Santiago, Vicky, Victoria) and others of the North Valley Cartel, ***including an <u>unrelated</u>*** "***Valencia***," as cocaine sources ***<u>after</u>*** May 1, 2000 on multiple occasions. *See* Exhibit F (Transcript, 07/11/2006) at pp.146-147 ("Q. And what was your source of supply … beginning in May 2000 until your arrest September of 2004? A. June, July, I started working with an individual by the name of Johnny Cano alias Santiago. Q. What year was that? June, July of 2000? A. 2000. … Q. There were three people you mentioned yesterday, Vicky, Johnny Cano, and Rasguno. Were those sources … of cocaine that you used beginning May of 2000, or did you use them before that at any point? A. After, correct. That's after May of 2000. …Q. So you began developing sources of cocaine supply that were all the North Valley Cartel; is that safe to say? A. That is correct. Because after the first of May, Enrique started commenting - - or made a comment that I owed him money. And therefore, all the doors in Cali were closed to me, and I started working with the North Valley Cartel."); *id.* at p.150 ("Q. I want to be very clear with you, sir. Your testimony today is that your organization received no cocaine from Victoria before May 1st, 2000, correct? A. Correct."); *see also id.* at

3

pp.158-159 ("Q. And what were your other sources after May 1st of 2000? A. Johnny Cano, Ramon Quintero, Patemuro. ... And our last person Leyner Valencia ... these people's names were all on the diskette that I handed to DEA Agent... Stommel ... where there is a very complete, full detail of name, amount, date, cash or money, distribution, payments, all of it is contained in that diskette."); *id.* at p.162 ("Q. And Leyner Valencia, this was not related to the Valencia-Trujillo family? A. No, because these Valencias are from Sarzal, Valle. ...Q. Again, affiliated with the North Valley Cartel? A. Correct."). The diskette was never produced before or during the Third Party's 2006 trial. Said ***withheld documentary evidence*** obtained by the Third Party, years after his trial, contradicted the trial testimony. *See* Exhibit G (spreadsheet printout from the diskette produced by Ramon O. Mejia showing that "***Santi***" of the North Valley Cartel was a source for hundreds of kilograms of cocaine from March 2000 through the May 1, 2000 date of the seizure); Exhibit H (DEA S/A Stommel's Report of May 1, 2006 interview with Ramon Orozco Mejia, weeks before the Third Party's trial) (Johnny Cano, a/k/a Santiago, of North Valley Cartel was source of hundreds of kilograms for Ramon O. Mejia ***starting in 1998, through, and after May 2000***).

12. Although Echeverry, Gutierrez, Martinez, and Ruiz cooperated regarding the exact same May 1, 2000 load, the government did not call them to testify at the Third Party's trial. Instead, U.S. Customs Agent John Kane testified at the Third Party's trial that surveillance captured these four (4) above-mentioned codefendants involved in the May 1, 2000 drug delivery. *See* Exhibit I.

13. The Third Party requests that the indictment and all judicial documents docketed and sealed in this case regarding the cooperation of these four (4) codefendants be unsealed and made available through Pacer.

14. Fully cognizant that he must present compelling reasons to obtain the Pre-Sentence Investigation Reports (PSRs) of these four (4) codefendants, the Third Party submits that his compelling need to obtain *Brady* material to ***fully prove his actual innocence*** regarding the May 1, 2000 conspiracy in accordance with U.S. Supreme Court and Second Circuit jurisprudence should persuade this Court to order the disclosure of certain portions of the requested PSRs, as explained *infra*.

4

## ARGUMENT

## I. THE FIRST AMENDMENT TO THE U.S. CONSTITUTION AND THE COMMON LAW GUARANTEE ACCESS TO JUDICIAL DOCUMENTS

"In *Nixon v. Warner Communications, Inc.*, 435 U.S. 589 (1978), the Supreme Court held that there is a common law 'presumption . . . in favor of public access to judicial records.'" *See United States v. Sater*, 2019 U.S. Dist. LEXIS 121749, at *5 (E.D.N.Y. 2019) (*quoting Nixon*, 435 U.S. at 602) (alternative citations omitted).

"The Second Circuit has held that some judicial records are also entitled to a presumption of openness under the First Amendment." *Sater* at *5 (*citing Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006)). The government cannot dispute that "the records at issue enjoy a qualified right of access under both the common law and the First Amendment." *See id.* at *5. Therefore, as the learned Senior Judge Glasser wrote in *Sater*, the merits of an application to unseal judicial documents "need only be analyzed under the 'stronger' First Amendment right." *Id.* at *5 (*citing United States v. Erie County, N.Y.*, 763 F.3d 235, 239 (2d Cir. 2014)).

The "well-settled" law requires that, "where a First Amendment presumption of access attaches to a judicial document, the document must be made public unless the court makes 'specific, on the record findings ... demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" *Id.* at *6 (*quoting Lugosch*, 435 F.3d at 120).

5

Senior Judge Glasser also explained that the "burden of proof that sealing *or its continuance* is warranted is borne by the party asserting it, and the '*burden is a heavy one*.'" *See Sater* at \*6 (*quoting In re Application to Unseal 98 Cr. 1101*, 891 F. Supp. 2d 296, 299 (E.D.N.Y. 2012)) (emphasis added). Here, all documents should be unsealed, in whole, unless the government can show some reason to apply minor redactions *a quarter century after-the-fact*. The Court should "articulate the basis for any closure order, supplying sufficient basis for appellate review on the public record." *Id*. at \*7 (citations and internal marks omitted).

"[U]nsealing may constitutionally be required, even in the face of compelling interests for continued secrecy, if those interests are outweighed by an even more compelling need for disclosure." *Id*. at \*10 (brackets added; citations omitted). Here, the Third Party has such a compelling need for disclosure to meet his high burden to present *credible and compelling evidence of actual innocence* that constitutionally ineffective trial counsel failed to present to show he had no involvement whatsoever in the conspiracy to possess more than a ton of cocaine on May 1, 2000. Additionally, the government's failure to correct the perjured testimony of Ramon Orozco Mejia, "the most important witness" presented during the Third Party's trial according to the jury foreman, Exhibit J, was prosecutorial misconduct that violated the right to a fair trial. *Alzate* at 1110-1111 (remanding for new trial as defendant was "entitled to put his defense forward *free of the prosecutorial misconduct*") (emphasis added).

6

The Second Circuit has set forth a three-step inquiry to "determine whether the presumption attaches to a particular record." *See Mirlis v. Greer*, 952 F.3d 51, 59 (2d Cir. 2020). Applying the three-step inquiry, the Court should find the requested records are "judicial documents" to which the presumption of public access attaches. The requested documents are "judicial documents" because they were all "relevant to the performance of the judicial function and useful in the judicial process." *See Brown v. Maxwell*, 929 F.3d 41, 49 (2d Cir. 2019) (citation omitted). "[W]here documents directly affect an adjudication . . . or are used to determine litigants' substantive rights, the presumption of access is at its zenith." *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 142 (2d Cir. 2016) (brackets added; citations and internal quotation marks omitted). Because of the weight of the presumption of access, the government cannot identify any factors that legitimately weigh against disclosure of the requested judicial documents 25 years after-the-fact.

Where the cooperation of Echeverry, Gutierrez, Martinez, and Ruiz regarding the May 1, 2000 cocaine conspiracy has already been made public, as in this case, the government's interest in protecting materials containing information regarding the cooperation that they provided disappears, and the Third Party's right to access should necessarily prevail. *See United States v. Huntley*, 943 F.Supp. 2d 383, 387 (E.D.N.Y. 2013); *United States v. Key,* 2010 WL 3724358, at \*2-3 (E.D.N.Y. 2010); *see also In re Application to Unseal 98 Cr. 1101*, *supra*, 891 F.Supp.2d at 300.

7

## II. THE SPECIAL NEED TO ACCESS PORTIONS OF DEFENDANTS' PSRs

It is well-settled that there is no First Amendment right of access to PSRs, but the "analysis under the common law right of access is somewhat different. Since the presentence report is undoubtedly in the district court's possession, the common law right of access attaches to this document. However, the important question is what kind of showing will be sufficient to warrant disclosure of the contents of the report to a third party." *See United States v. Corbitt*, 879 F.2d 224, 237 (7th Cir. 1989).

The Second Circuit requires a showing of special need before a third party can obtain a copy of a PSR, as requested here. *See United States v. Charmer Indus., Inc.*, 711 F.2d 1164, 1174-1176 (2d Cir. 1983) (*following Hancock Brothers, Inc. v. Jones*, 293 F.Supp. 1229, 1234 (N.D.Cal. 1968) in concluding PSRs may not be disclosed "in the absence of a compelling demonstration that disclosure of the report is required to meet the ends of justice"); *accord Corbitt*, 879 F.2d at 239 ("Only where a compelling, particularized need for disclosure is shown should the district court disclose the report; even then, however, the court should limit disclosure to those portions of the report which are directly relevant to the demonstrated need."). Mindful of the limits on disclosing PSRs to third parties, this Third Party requests access to only those *portions* of these codefendants' PSRs that reveal the full extent of their cooperation as to the May 1, 2000 conspiracy "to meet the ends of justice" by providing corroboration of his *actual innocence* for his contemplated litigation.

8

This Third Party satisfies the "compelling, particularized need standard", *Corbitt*, *supra*, as a matter of law, as he must present *credible and compelling evidence of actual innocence* that constitutionally ineffective counsel failed to present at trial to show he had no involvement in the conspiracy to possess more than a ton of cocaine on May 1, 2000. *Please see Rivas v. Fischer*, 687 F.3d 514, 540-541 (2d Cir. 2012) ("petitioner seeking access to a federal *habeas* court in the face of a procedural obstacle must advance both a legitimate constitutional claim and a credible and compelling claim of actual innocence. It is the combination of the two claims - that the petitioner is likely innocent and that his conviction was likely the result of nonharmless constitutional error - that permits a *habeas* court to review the petition notwithstanding procedural obstacles in order to avoid a miscarriage of justice.") (*citing Schlup v. Delo*, 513 U.S. 298, 316 (1995)); *see also Alzate* at 1110-1111 (government failure to correct perjured testimony violates the constitutional right to a fair trial and constitutes "prosecutorial misconduct").

## III. THE LIST OF SEALED JUDICIAL DOCUMENTS TO BE UNSEALED AND ALL OTHER JUDICIAL DOCUMENTS DOCKETED IN THIS CASE

The Third Party requests the unsealing of the same nine (9) sealed documents for each of the above-mentioned four (4) case codefendants which were docketed as ECF Doc. Nos. 136, 147, 152, 195, 199, and 261 through 264. The Third Party also requests that *all other judicial documents docketed in the case of these defendants*, *including the original Complaint filed in Magistrate Docket 00-mj-00748-RLM-6*, which are not available through Pacer, be made available for access through Pacer.

9

## IV. CONCLUSION

Almost 25 years have passed since this case indictment was filed in 2000; therefore, the government cannot articulate a valid interest in keeping any of the "judicial documents" filed in this case docket either sealed or unavailable on Pacer. There can be no dispute that the court filings constitute "judicial documents." Here, this Third Party has a compelling need to obtain access to all filings and portions of the PSRs that should prevail where the fact of the codefendants' cooperation is no secret for almost a quarter century, and the totality of the evidence strongly indicates that the "judicial documents" in this case will conclusively show that the Third Party is ***actually innocent*** of any connection with the cocaine load seized on May 1, 2000, which was charged here and in the Tampa, Florida indictment against the Third Party. The sealing of docketed documents "may be justified only by specific, on-the-record findings that sealing is necessary to preserve higher values and only if the sealing order is narrowly tailored to achieve that aim." *See Lugosch*, *supra*, 435 F.3d at 124. If the Court decides that "compelling reasons" somehow still exist to deny public access to these documents, "the limitation should not be broader than necessary." *United States v. All Funds on Deposit at Wells Fargo Bank*, 643 F.Supp.2d 577, 585 (S.D.N.Y. 2009) (citing cases requiring disclosure with redactions). The government cannot suggest "specific findings" to legitimately justify continued sealing in these closed cases. *See United States v. Amodeo*, 44 F.3d 141, 147 (2d Cir. 1995).

## V. THE THIRD PARTY'S PRAYER FOR RELIEF

For all the foregoing reasons, the undersigned Third Party prays that the Court will enter an Order *forthwith* unsealing (1) all of the requested "judicial documents" in the dockets for the co-defendants Echeverry, Gutierrez, Martinez, and Ruiz, and *forthwith* disclosing (2) the requested portions of the PSRs for these co-defendants. Finally, the undersigned Third Party requests that all "judicial documents" docketed in all four (4) cases, sealed and unsealed, be made available through Pacer *forthwith*.

Respectfully submitted,

Joaquin Mario Valencia-Trujillo
Register Number 02440-748
FCI Oakdale II
2105 East Whatley Road
Oakdale, Louisiana 71463

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I have served a true and correct copy of the foregoing **THIRD-PARTY MOTION TO INTERVENE AND UNSEAL** on the United States Attorney's Office for the Eastern District of New York by mail sent to 271 Cadman Plaza East, Brooklyn, NY 11201 on this   1   day of  March  , 2025.

Joaquin Mario Valencia-Trujillo

## VERIFICATION

I verify under penalty of perjury that the foregoing is true and correct

and that the attached Exhibits are true and correct copies of their originals.

Executed on __1__ of __March__ , 2025.

Joaquin Mario Valencia-Trujillo

12

# EXHIBIT A

## DOCKET SHEET (GUSTAVO MARTINEZ)

CLOSED

## U.S. District Court
## Eastern District of New York (Brooklyn)
## CRIMINAL DOCKET FOR CASE #: 1:00-cr-00515-JG-7

Case title: USA v. Dorado, et al                     Date Filed: 05/15/2000

                                                     Date Terminated: 05/17/2001

Assigned to: Judge John Gleeson

### Defendant (7)

**Gustavo Martinez**                  represented by **Joel Kenneth Dranove**
*TERMINATED: 05/21/2001*                             Joel Dranove
                                                     225 Broadway
                                                     Suite 1804
•                •              •                    New York, NY 10007                   •
                                                     (212) 619-5700
                                                     Fax: 212-619-7471
                                                     Email: jdranove@gmail.com
                                                     *TERMINATED: 05/21/2001*
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*
                                                     *Designation: Retained*

### Pending Counts                                   ### Disposition

21:846 and 841(b)(1)(A)(ii)(II); 18:3551 et
seq.- CONSPIRACY TO DISTRIBUTE
AND POSSESS WITH INTENT TO                           Receives 40 months imprisonment; 5 years
DISTRIBUTE 5 KILOGRAMS OR MORE                       supervised release w/condition; $100.00
OF A SUBSTANCE CONTAINING                            special assessment.
COCAINE.
(1s)

### Highest Offense Level (Opening)

Felony

### Terminated Counts                                ### Disposition

21:846 and 841(b)(1)(A)(ii)(II); 18:3551 et
seq.- CONSPIRACY TO DISTRIBUTE
AND POSSESS WITH INTENT TO
DISTRIBUTE 5 KILOGRAMS OR MORE                       Dismissed on Government's motion.
OF A SUBSTANCE CONTAINING
COCAINE.
(1)

21:841(a)(1) and 841(b)(1)(A)(ii)(II); 18:2         Dismissed on Government's motion.
and 3551 et seq.- DISTRIBUTE AND

POSSESS WITH INTENT TO
DISTRIBUTE 5 KILOGRAMS OR MORE
OF A SUBSTANCE CONTAINING
COCAINE.
(2s)

**Highest Offense Level (Terminated)**

Felony

**Complaints**                                    **Disposition**

None

**Plaintiff**

**USA**                              represented by **John R. Kroger**
United States Attorney's Office
Criminal Division
One Pierrepont Plaza
Brooklyn, NY 11201
254-6125
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 05/15/2000 | | Magistrate Azrack has been selected by random selection to handle any matters that may be referred in this case. (Reddy, Lisa) (Entered: 05/18/2000) |
| 05/22/2000 | 12 | SUPERSEDING INDICTMENT as to Carlos Echeverry (1) count(s) 1s , Hernan Barona Dorado (2) count(s) 1, Jose Peralto (3) count(s) 1, Julian Morales (4) count(s) 1, Jairo Leon Marulanda-Valencia (5) count(s) 1, Jose Gonzalez (6) count(s) 1, Jose M. Rodriguez (7) count(s) 1, Gustavo Martinez (8) count(s) 1, Juan Carlos Garcia (9) count(s) 1, Manuel F. Fernandez (10) count(s) 1, Raymond Gutierrez (11) count(s) 1, Carlos Arturo Ruiz (12) count(s) 1, Ernesto Feliz (13) count(s) 1, Alexis Fernandez-Vasquez (14) count(s) 1, Hector Fabio Loaiza (15) count(s) 1 . (Reddy, Lisa) (Entered: 05/25/2000) |
| 06/02/2000 | 14 | CALENDAR ENTRY as to Hernan Barona Dorado, Jose Peralto, Julian Morales, Jairo Leon Marulanda-Valencia, Jose E Gonzalez, Jose M. Rodriguez, Gustavo Martinez, Juan Carlos Garcia, Manuel F. Fernandez, Raymond Gutierrez, Carlos Arturo Ruiz, Carlos Echeverry, Ernesto Feliz, Alexis Fernandez-Vasquez, Hector Fabio Loaiza. Case called before Judge John Gleeson on 6/2/00 for arraignment. AUSA Elaine Banar and defendants present with counsel, except dft. Dorado, a fugitive, and dft. Rodriguez, not present. Court Reporter: Holly Driscoll. Defendants plead Not Guilty: Jose (2) count(s) 1, Julian Morales (3) count(s) 1, Jairo Leon Marulanda-Valencia (4) count(s) 1, Jose E Gonzalez (5) count(s) 1, Jose M. Rodriguez (6) count(s) 1, Gustavo Martinez (7) count(s) 1, Juan Carlos Garcia (8) count(s) 1, Manuel F. Fernandez (9) count(s) 1, Raymond Gutierrez (10) count(s) 1, Carlos Arturo Ruiz (11) count(s) 1, Carlos Echeverry (12) count(s) cmp, 1, 1s, Ernesto Feliz (13) count(s) 1 . Atty. David Goldstein standing in for arraignment purposes for attys. James Kasaurous and Ray Kulscar. Next conference set for 7/21/00 at 3:00. (Reddy, Lisa) (Entered: 06/09/2000) |

| 06/16/2000 | 20 | LETTER as to Hernan Dorado, et al., dated 6/16/00 from AUSA Elaine D. Banar to Counsel, providing and requesting discovery. (No attachments). (Reddy, Lisa) (Entered: 06/19/2000) |
|---|---|---|
| 06/19/2000 | 22 | SUPERSEDING INDICTMENT as to Hernan Barona Dorado (1) count(s) 1s, 2s, 4s, Jose Peralto (2) count(s) 1s, 4s, Julian Morales (3) count(s) 1s, 4s, Jairo Leon Marulanda-Valencia (4) count(s) 1s, 2s, 3s, Jose E Gonzalez (5) count(s) 1s, 4s, Jose M. Rodriguez (6) count(s) 1s, 4s, Gustavo Martinez (7) count(s) 1s, 2s, Juan Carlos Garcia (8) count(s) 1s, Manuel F. Fernandez (9) count(s) 1s, 2s, 3s, Raymond Gutierrez (10) count(s) 1s, 2s, Carlos Arturo Ruiz (11) count(s) 1s, 2s, Carlos Echeverry (12) count(s) 1ss, 2ss, Ernesto Feliz (13) count(s) 1s, 2s, Alexis Fernandez-Vasquez (14) count(s) 1s, 2s, Hector Fabio Loaiza (15) count(s) 1s, 4s . (Reddy, Lisa) (Entered: 06/23/2000) |
| 06/29/2000 | 29 | CALENDAR ENTRY as to Jose Peralto, Julian Morales, Jairo Leon Marulanda-Valencia, Jose E Gonzalez, Jose M. Rodriguez, Gustavo Martinez, Juan Carlos Garcia, Raymond Gutierrez, Carlos Echeverry, Ernesto Feliz, Alexis Fernandez-Vasquez, Hector Fabio Loaiza. Case called before Judge John Gleeson on 6/29/00 for status conference. AUSA Elaine Banar and defendants present with counsel. Court Reporter: Shelly Silverman. Interpreter: Carmen Pascual (Spanish). Case designated complex. Dfts. #9 and 11 to be arraigned on 6/30/00. Discovery to be completed 7/24/00. Defense motions due 9/8/00; government response due 9/22/00; reply due 9/29/00; motion hearing set for 10/13/00 at 2:00. Jury selection and trial set for 11/27/00 at 9:30. (Reddy, Lisa) (Entered: 07/11/2000) |
| 07/05/2000 | 28 | LETTER as to dft. Dorado, et al., dated 6/30/00 from AUSA Elaine D. Banar to Counsel, enclosing additional discovery. (No attachments). (Reddy, Lisa) Modified on 07/06/2000 (Entered: 07/06/2000) |
| 07/18/2000 | 32 | LETTER as to Hernan Dorado, et al., dated 7/14/00 from AUSA Elaine D. Banar to Counsel, enclosing discovery. (No attachments). (Reddy, Lisa) (Entered: 07/25/2000) |
| 07/24/2000 | 31 | (copy) LETTER dated 6/16/00 from AUSA, Elaine Banar, to all counsel, providing discovery. (Asreen, Wendy) (Entered: 07/24/2000) |
| 07/27/2000 | 33 | LETTER as to dft. Dorado, et al., dated 7/26/00 from AUSA Elaine D. Banar to Counsel, enclosing a copy of a fingerprint report as part of the government's ongoing discovery obligations. (No attachments). (Reddy, Lisa) (Entered: 07/31/2000) |
| 08/07/2000 | 37 | LETTER as to dft. Dorado, et. al., dated 8/4/00 from AUSA Elaine D. Banar to Counsel, providing the following discovery: copies of drug records and a notebook seized from Ivette Garcia and additional transcripts of tape-recordings. (No attachments). (Reddy, Lisa) (Entered: 08/08/2000) |
| 08/08/2000 | 38 | Original papers of document number 36, Govt.'s motion for forfeiture of bail, rec'd. from chambers. Govt. to re-file this motion. (Vaughn, Terry) (Entered: 08/09/2000) |
| 08/14/2000 | 43 | FEDEX RETURNED as undeliverable. Motion for order forfeiting bail, Declaration, Notice to clerk, and Proposed order sent to Ernesto Feliz returned on 8/14/00. (Reddy, Lisa) (Entered: 08/14/2000) |
| 08/14/2000 | 44 | FEDEX RETURNED as undeliverable. Motion for order forfeiting bail, Declaration, Notice to clerk, and Proposed order sent to Pedro Vasquez returned on 8/14/00. (Reddy, Lisa) (Entered: 08/14/2000) |
| 08/14/2000 | 45 | FEDEX RETURNED as undeliverable. Motion for order forfeiting bail, Declaration, Notice to clerk, and Proposed order sent to Michelle Fermin returned on 8/14/00. (Reddy, Lisa) (Entered: 08/14/2000) |

| 08/15/2000 | 46 | NOTICE of proof of FEDEX delivery to Jose Vasquez, on 8/10/00. (Reddy, Lisa) (Entered: 08/15/2000) |
| 08/16/2000 | 51 | LETTER dated 8/15/00 from AUSA Elaine D. Banar to Counsel, enclosing, pursuant to the government's ongoing discovery obligations, copies of additional drug records seized from dft. Carlos Ruiz after a consent search of his residence. (Reddy, Lisa) (Entered: 08/30/2000) |
| 09/21/2000 | 63 | LETTER dated 9/20/00 from AUSA Banar to All Counsel furnishing the discovery - the 4/10/00 statement of Juan Jose Gonzalez. (Lee, Tiffeny) (Entered: 09/25/2000) |
| 11/01/2000 | 83 | LETTER dated 10/24/00 from AUSA Banar to Counsel advising that the seized bulk drug evidence will be destroyed 11/10/00. (Lee, Tiffeny) (Entered: 11/01/2000) |
| 11/09/2000 | 89 | CALENDAR ENTRY as to Julian Morales, Gustavo Martinez ; Case called before Magistrate Joan M. Azrack on date of 11/9/00 for Magistrate Proceeding. AUSA Banar; Dfts in cust/w/attys in order Joel Dranov, Lawrence Hermann;Tape # 00/75(5394-5662); Span Int: Estrelitta Plested. Time excluded as to both dfts for period of 11/9-12/18/00. (Lee, Tiffeny) (Entered: 11/14/2000) |
| 11/09/2000 | 90 | ORDER of Excludable Delay as to Gustavo Martinez for the period of 11/9-12/18/00. (Signed by Magistrate Joan M. Azrack , Dated 11/9/00) (Lee, Tiffeny) (Entered: 11/14/2000) |
| 11/20/2000 | 98 | LETTER dated 11/17/00 from AUSA Banar to Judge Gleeson providing estimate of trial length. (Lee, Tiffeny) (Entered: 11/22/2000) |
| 12/04/2000 | 103 | ORDER as to Gustavo Martinez referring application for guilty plea to Magistrate Judge. (Signed by Judge John Gleeson, on 11/30/00) (Lee, Tiffeny) (Entered: 12/05/2000) |
| 12/04/2000 | 104 | CALENDAR ENTRY as to Gustavo Martinez; Case called before Magistrate Joan M. Azrack on date of 12/4/00 for Pleading. AUSA Banar; Dft in custody w/atty Joel Dranove; Interpreter (Spanish): Estrellita Plested; Tape # 00/81(0-855). Dft pleads Guilty: Gustavo Martinez (7) count(s) 1s . Sentencing set for 2/2/01 @ 2:00 p.m. (Lee, Tiffeny) (Entered: 12/05/2000) |
| 12/06/2000 | 106 | LETTER dated 11/17/00 from AUSA Banar to Judge Gleeson estimating that the govt's case will take 8 days. (Lee, Tiffeny) (Entered: 12/07/2000) |
| 12/06/2000 | 107 | TRANSCRIPT of Criminal Cause for Guilty before Magistrate Azrack filed in case as to Gustavo Martinez for dates of 12/4/00; Court Transcriber: Rosalie Lombardi, Transcription Plus II (Lee, Tiffeny) (Entered: 12/07/2000) |
| 01/03/2001 | 131 | INTER-OFFICE MEMO from Stephen L. Brighton, SUSPO to Judge Gleeson dated 12/27/00 regarding Delay in Presentence Investigation. (Lee, Tiffeny) (Entered: 01/04/2001) |
| 04/30/2001 | 136 | SEALED DOCUMENT: Letter dated 4/24/01. Placed in vault. (DiLorenzo, Krista) (Entered: 05/02/2001) |
| 05/11/2001 | 141 | CALENDAR ENTRY as to Gustavo Martinez; Case called before Judge John Gleeson on date of 5/11/01 for Sentencing. AUSA Kowalski; Dft pres/cust w/atty Joel Dranove; Span Int: Anna; Court Reporter: Anthony Mancuso. Sentencing adj'd to 5/18/01 @ 12:00. (Lee, Tiffeny) (Entered: 05/16/2001) |
| 05/15/2001 | 140 | LETTER dated 5/5/01 from Alan Nelson, Esq. to Judge Gleeson requesting a downward departure as to dft Miguel Medina. (Lee, Tiffeny) (Entered: 05/16/2001) |
| 05/17/2001 | 144 | CALENDAR ENTRY as to Gustavo Martinez; Case called before Judge John Gleeson on date of 5/17/01 for Sentencing. AUSA Kowalski; Dft w/atty Jon Dranov, Esq.; Int: |

| | | |
|---|---|---|
| | | Cristana Arsuaga-Sworn; Court Reporter: Gene Rudolph. Receives 40 months imp; 5 yrs supervised release w/special condition of substance abuse treatment as directed by Prob; $100 s/a. Recommendation of Miami, FL designation to the BOP. (Lee, Tiffeny) (Entered: 05/22/2001) |
| 05/17/2001 | | Sentencing held Gustavo Martinez (7) count(s) 1s. (Lee, Tiffeny) (Entered: 05/22/2001) |
| 05/18/2001 | 142 | LETTER dated 5/0/01 from Alan Nelson, Esq. to Judge Gleeson requesting adjournment of 5/25/01 sentencing to 6/1/01. (Lee, Tiffeny) (Entered: 05/21/2001) |
| 05/18/2001 | 143 | LETTER dated 5/14/01 from Alan Nelson, Esq. to Judge Gleeson requesting adjournment of 5/25/01 sentencing to 6/15/01. (Lee, Tiffeny) (Entered: 05/21/2001) |
| 05/21/2001 | | ENDORSED ORDER: Signed by Judge John Gleeson , on 5/17/01. The sentence is adjourned to 6.8.01 @ 2:00. So ordered. Signed Judge John Gleesion. on 5/17/01. (Lee, Tiffeny) (Entered: 05/21/2001) |
| 05/21/2001 | 145 | JUDGMENT Gustavo Martinez (7) count(s) 1s. Receives 40 months imprisonment; 5 years supervised release w/condition that dft is to receive substance abuse treatment as directed by the probation department; $100.00 special assessment. The Court recommends that the dft be designated to a correction facility as close as possible to Miami, Fl, if this is consistent w/the BOP policy. Open counts dismissed on govt's motion. (Signed by Judge John Gleeson on 5.21.01) c/m (Lee, Tiffeny) (Entered: 05/22/2001) |
| 05/21/2001 | | DISMISSAL of Count(s) on Government Motion as to Gustavo Martinez party Gustavo Martinez. Counts Dismissed: Gustavo Martinez (7) count(s) 1, 2s. (Lee, Tiffeny) (Entered: 05/22/2001) |
| 05/22/2001 | 146 | TRANSCRIPT of Criminal Cause for Guilty before USMJ Azrack filed in case as to Gustavo Martinez for dates of 12/4/00; Court Transcription: Transcription Plus II (Lee, Tiffeny) (Entered: 05/22/2001) |
| 05/23/2001 | 147 | SEALED DOCUMENT/Letter placed in vault. (Lee, Tiffeny) (Entered: 05/23/2001) |
| 06/11/2001 | 152 | SEALED DOCUMENT placed in vault. (Lee, Tiffeny) (Entered: 06/11/2001) |
| 07/11/2001 | | Certified copy of docket sheet sent to USCA. [164-1] appeal (McGee, Maryann) (Entered: 07/11/2001) |
| 08/01/2001 | | Certified copy of docket sheet sent to USCA. [168-1] appeal. (deft Loaiza) (Glenn, Marilyn) (Entered: 08/01/2001) |
| 10/15/2001 | 186 | LETTER dated 10/12/01 from Judge Gleeson to Mr. Fernandez, thanking him for his concernduring the 9/11/01 tragic events. (DiLorenzo, Krista) (Entered: 10/15/2001) |
| 10/15/2001 | 187 | LETTER dated 9/28/01 from Rafael A. Fernandez to Judge Gleeson, regarding the "awful tragedy" of the WTC. (DiLorenzo, Krista) (Entered: 10/15/2001) |
| 11/30/2001 | 196 | LETTER dated 11/19/01 from Peter Till to Mary Gonzalez, confirming the adjournment of the 11/21/01 conf. for 11/26/01 at 10:30. (DiLorenzo, Krista) (Entered: 12/06/2001) |
| 12/06/2001 | 195 | SEALED DOCUMENT placed in vault. (DiLorenzo, Krista) (Entered: 12/06/2001) |
| 12/11/2001 | 199 | SEALED DOCUMENT placed in vault. (DiLorenzo, Krista) (Entered: 12/12/2001) |
| 01/31/2002 | 206 | ORDER directing the Gov't to forward a copy of this letter immediately to the Warden of MDC and to provide a response in writing no later than 02.08.02. (Signed by Judge John Gleeson on 01.28.02). See letter dated 01.14.02 from Samantha Cruz-Fernandez to USDJ Gleeson. C/M by Chambers. (Noh, Kenneth) (Entered: 01/31/2002) |

| 02/07/2002 | 207 | LETTER dated 01.29.02 from Peter W. Till to USDJ Gleeson confirming that the sentencing has been adjourned from 02.01.02 to 02.22.02 @ 2pm. (Noh, Kenneth) (Entered: 02/07/2002) |
|---|---|---|
| 04/01/2002 | 221 | TRANSCRIPT of Waiver of Speedy Trial filed in case as to Gustavo Martinez, Julian Morales for dates of 11/9/00; Court Transcription: Transcription Plus, II - Rosalie Lombardi, Transcriber. (fwd'd to Judge Gleeson) (Lee, Tiffeny) (Entered: 04/01/2002) |
| 01/30/2003 | 238 | LETTER dated 12/26/02 from Ernesto Feliz to Judge Gleeson, in lieu of a formal motion. (DiLorenzo, Krista) (Entered: 01/30/2003) |
| 05/17/2006 | 261 | Sealed Letter placed in vault as per order of Mag. Azrack. (Piper, Francine) (Entered: 05/17/2006) |
| 05/17/2006 | 262 | SEALED ENDORSED ORDER placed in vault as per order of Mag. Azrack.(Piper, Francine) (Entered: 05/17/2006) |
| 05/19/2006 | 263 | Sealed Letter placed in vault as per order of Mag. Azrack. (Piper, Francine) (Entered: 05/19/2006) |
| 05/19/2006 | 264 | SEALED ENDORSED ORDER placed in vault as per order of Mag. Azrack. (Piper, Francine) (Entered: 05/19/2006) |
| 07/31/2006 | 265 | TRANSCRIPT of Sentencing as to Gustavo Martinez held on 5/18/01 before Judge Gleeson. Court Reporter: Gene Rudolph. AUSA Nikki Kowalski; Defense Counsel, Joel Dranove. (Piper, Francine) (Entered: 07/31/2006) |

# SENTENCING TRANSCRIPT (GUSTAVO MARTINEZ)

# EXHIBIT B

# SENTENCING TRANSCRIPT (GUSTAVO MARTINEZ)



**FILED** 1

IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ JUL 31 2006 ★

1  UNITED STATES DISTRICT COURT
2  EASTERN DISTRICT OF NEW YORK

3  - - - - - - - - - - - - X                    BROOKLYN OFFICE

4  UNITED STATES OF AMERICA,    :    CR 00-515 (JG)

5                              :

6

7      -against-              :

                                United States Courthouse
8  GUSTAVO MARTINEZ,           :    Brooklyn, New York

9                                   May 18, 2001
10         Defendant.          :    10:30 o'clock a.m.

11  - - - - - - - - - - - - X

12              TRANSCRIPT OF SENTENCING
13       BEFORE THE HONORABLE JOHN GLEESON
              UNITED STATES DISTRICT JUDGE
14

15  APPEARANCES:

16  For the Government:        NIKKI KOWALSKI
17                             Assistant United States Attorney
                               One Pierrepont Plaza
18                             Brooklyn, New York

19

20  For the Defendant:         JOEL DRANOVE, ESQ.

21  Court Reporter:

22                             Gene Rudolph
                               225 Cadman Plaza East
23                             Brooklyn, New York
                               (718) 260-2538
24

25  Proceedings recorded by mechanical stenography, transcript
    produced by computer-aided transcription.

        GR      OCR      CM      CRR      CSR

2

1       THE CLERK:  United States versus Martinez.

2       (The interpreter is duly sworn.)

3       THE COURT:  Are you ready to proceed?

4       MR. DRANOVE:  Yes.

5       MS. KOWALSKI:  Yes.

6       THE COURT:  Okay.  I see no reason not to accept the

7   recommendation that I accept the plea of guilty, having

8   reviewed these minutes before Judge Azrack.

9       Is there any reason I shouldn't accept the plea?

10      MS. KOWALSKI:  No, Your Honor.

11      MR. DRANOVE:  No, Your Honor.

12      THE COURT:  Okay.  I accept it.

13      Is there any objection to the presentence report or

14  the addendum to it?

15      MR. DRANOVE:  No, Your Honor.

16      MS. KOWALSKI:  No, Your Honor.

17      THE COURT:  Okay.  Do you want to be heard?

18      I have Ms. Kowalski's letter of May 10th.

19      MR. DRANOVE:  Yes, Your Honor.  I wrote a letter,

20  forwarded it on Wednesday.  It may not have been received by

21  Your Honor.  I read it to Ms. Kowalski.  I am offering a copy

22  of it up to Your Honor.

23      THE COURT:  Thank you.

24      MR. DRANOVE:  The original was signed.

25      THE COURT:  All right.  Would you like to be heard

GR      OCR      CM      CRR      CSR

3

1    any further?

2            MR. DRANOVE:  Yes, Your Honor.

3            I want to inform the Court that my client for many

4    weeks after I first met him, when I was in his presence, was

5    shaking and ultimately -- physically just shaking, and

6    ultimately I discovered it was from the fact that as a result

7    of his awareness of what he was in the midst of he had begun

8    drinking extraordinarily and in fact using cocaine at the same

9    time.  He saw no way out and he went forward and he,

10   middle-aged gentlemen, turned his life around and -- in a

11   criminal manner.

12           After coming to this country, working hard, becoming

13   a citizen, he returned home in 1999 to Armenia, Colombia,

14   where there had been a terrible earthquake and for reasons we

15   will -- we can conjecture about, he made a decision, that was

16   a catastrophe for himself and his family and he understands

17   this.

18           The complete record before Your Honor is understood

19   by all.  My client is ready to proceed.  He wishes to make a

20   statement on his own behalf.

21           That's the conclusion of my remarks, Your Honor.

22           THE COURT:  All right.  Mr. Dranove.  Thank you.

23           MR. DRANOVE:  You are welcome.

24           THE COURT:  Sir, you have a right to speak.  Is

25   there anything you would like to say?

GR      OCR      CM      CRR      CSR

4

1          THE DEFENDANT:  Yes.

2          THE COURT:  Go ahead.

3          THE DEFENDANT:  Am I going to tell you and then you

4    tell the judge?

5          THE COURT:  No.  Speak directly to me.

6          THE DEFENDANT:  I am very nervous.  I write it in

7    Spanish.

8          THE COURT:  That's all right.  Everybody is nervous.

9    You should be nervous.  Don't let it get in the way of reading

10   your statement.

11         THE DEFENDANT:  Your Honor, I want to tell you that

12   I am very ashamed because of my mistakes and all the pain I

13   have caused to those who love me.  It hurts to remember the

14   decisions, the decisions that I have made that have destroyed

15   my life and my family's.  I feel bad to know that I was a

16   victim and a slave to the vices of alcohol and drugs.  They

17   dragged me and seduced me to do things I had never done before

18   when I had a clear mind.  Thank God that in prison I have had

19   time to reflect and to realize all the harm that I have caused

20   to this country, to my wife and my children, who have

21   supported me so much during this time.

22         I was scared to make decisions that possibly could

23   have changed my life but I was never able to make those

24   decisions because I feared for my life and my family's,

25   because I was surrounded by people who are capable of doing

5

1  anything.

2          I want to say something to the government and to
3  Your Honor, that I have tried to cooperate and give all the
4  information possible regarding my case because I recognize
5  that I made a mistake and it is my duty to try to fix it in
6  some way.  I ask forgiveness to God and to Your Honor.  I know
7  that I deserve to be in prison and to repay my debt to
8  society.

9          I also ask if I can be given an opportunity to be
10 with my family as soon as possible.

11         That is it, but thank you.

12         I would like to add that I would like to go to a
13 prison in Miami or close to Miami where my family lives, so
14 that I can have contact with them there.

15         THE COURT:  All right.  Thank you.

16         Ms. Kowalski?

17         MS. KOWALSKI:  Your Honor, the government's letter
18 details the manner in which Mr. Martinez's cooperation was
19 useful to the government.

20         The only thing that I would like to add now is, I
21 participated in many of the interview sessions with
22 Mr. Martinez as we prepared for the trial against Mr. Ruiz.
23 Just to, I suppose, add some credence to the contents of
24 Mr. Dranove's letter, it was apparent to everybody who
25 participated in those meetings that Mr. Martinez was genuinely

GR    OCR    CM    CRR    CSR

6

1  struggling between a sincere desire to be helpful and what
2  appeared to be a very, very real fear about the consequences
3  of part of what he had to say to us. He participated but it
4  was -- he did seem to have to overcome a great deal of fear in
5  order to do that.

6          THE COURT:  Okay.  Do you have any recommendation as
7  to the appropriate sentence?

8          MS. KOWALSKI:  I do not, Your Honor.

9          THE COURT:  All right.  Can someone tell me whether
10  this is just -- on page nine of the presentence report it says
11  the defendant has one criminal history point. Is that --

12          PROBATION OFFICER:  That is a mistake.  It should
13  read no criminal history points.

14          I apologize, Your Honor.

15          THE COURT:  He is a naturalized citizen, correct?

16          MS. KOWALSKI:  Yes.

17          MR. DRANOVE:  Yes, sir.

18          THE COURT:  All right.  While it is on my mind, it
19  wasn't the first thing I intended to say but I will say it
20  because it is on my mind.

21          I am about to confer a sentence on you that reflects
22  substantial leniency because of your cooperation. I think you
23  believe in your heart what you say about how you got all this
24  behind you.  I even think you might be right.  But in a way I
25  wish you could have been here 15 minutes ago.  I had someone

GR      OCR      CM      CRR      CSR

7

1    before me whose guideline range was like yours, was even lower

2    than yours.  Yours is 135 to 168.  I had someone before me who

3    five years ago had the same kind of guideline range, except it

4    was a little less, and he got a lenient sentence and then they

5    let him out and then he immediately got back into violating

6    the law and he was back before me.  I haven't sentenced him

7    yet but as he left I'm sure I ruined his day because I told

8    him I was considering imposing a very lengthy jail sentence on

9    him in part because he cooperated, earned the trust of the

10   Court in the form of a very lenient sentence, and then abused

11   that trust and violated the law again after he got out.

12          As I say, it wasn't the first thing I intended to

13   mention to you.  I didn't intend to start out by threatening

14   you.  I don't mean that to be a threat.  But it is something I

15   want you to remember down the road.  You very much want this

16   to be your last appearance before me ever.  It matters to you

17   because your fortunate, you are not going to have the INS

18   swoop in and send you somewhere else.  You are going to be on

19   supervised release.  You are going to be answerable to me for

20   a substantial period of time after you get out of prison.

21          Let me get to where I would have started had I not

22   had that other case on right before yours.  There is a lot to

23   be said that's good about you.  I am sure you appreciate how

24   serious this criminal activity was that you got involved in.

25   I have no reason not to credit the argument, the assessment

GR    OCR    CM    CRR    CSR

8

1   advanced here, that you got involved in it because of your
2   substance abuse.  That doesn't excuse your crime but it makes
3   it slightly more understandable.  It is a very serious crime.

4           One of the things you have going for you is your
5   family, and I hope you appreciate how many families like yours
6   get just torn to shreds, ripped to pieces by these drugs.  It
7   is why this seemingly endless war against drugs keeps getting
8   fought.  No matter whether it's succeeding or not, the fact of
9   the matter is on this end, in cities like ours, there are
10  families that are just obliterated by these drugs.

11          But every other part of your life strikes me as
12  belonging on the positive side of your ledger, including your
13  family situation; certainly your cooperation with the
14  government.  You have an Assistant U.S. Attorney who comes
15  into this courtroom with significant credibility who speaks
16  strongly on your behalf.  That's why you are being sentenced
17  as leniently as you are about to be sentenced, and the fact
18  that she says so and the things that she says strike me as
19  favoring a lenient sentence.  You put yourself at risk.  Your
20  cooperation accomplished some significant results for the
21  government.

22          So from your guideline range of 135 to 168 months, I
23  am departing downward to a sentence of 40 months in the
24  custody of the Attorney General, to be followed by a five-year
25  term of supervised release, a special condition of which is

GR    OCR    CM    CRR    CSR

9

1  that you receive substance abuse treatment as directed by the

2  Probation Department. I am not imposing a fine but I am

3  imposing a special assessment, as I must.

4      You may well not regard this -- and I don't begrudge

5  you if this is true -- you may not regard this as an

6  especially lenient sentence because what, you have been in for

7  one year, correct?

8      MR. DRANOVE: Yes, sir.

9      THE COURT: All right. So it seems to me you

10  probably have got 24, roughly 24 months left.

11      MR. DRANOVE: Yes.

12      THE COURT: I know that is painful for you, to have

13  to deal with the fact that you are going to be2 a way from

14  your family for another 24 months. But whether you do or do

15  not regard it as a lenient sentence, that is the sentence. It

16  seems to me just in light of the severity of your offense. I

17  hope some day you regard today as the next chapter in your

18  life. You are not as young as some people that appear before

19  me but you've got plenty ahead of you, plenty to live for, and

20  I wish you well.

21      There is a right to appeal, probably.

22      MS. KOWALSKI: Yes.

23      THE COURT: You have a right to appeal, but I

24  wouldn't lie awake at night wondering about whether to appeal.

25  If you appealed you'd probably get your appeal dismissed, but

GR    OCR    CM    CRR    CSR

10

1   you do have a right to appeal to a higher court.

2          If you want to do that, you have to file a notice

3   within ten days in this courthouse or you lose that right.  If

4   you can't afford a lawyer to represent you on appeal, one will

5   be appointed for you.

6          Do you understand what I have said about that?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Is there anything further today?

9          MS. KOWALSKI:  There are some open counts.  Counts

10  two and three remain open and the government moves to dismiss

11  them.

12         THE COURT:  All right.  Granted.

13         Anything further?

14         MR. DRANOVE:  No, Your Honor.

15         Thank you very much.

16         THE COURT:  I recommend to the Bureau of Prisons

17  that the defendant be incarcerated as close as possible to the

18  Miami metropolitan area.  I don't know if they can do that,

19  sir, but I will certainly recommend to them that they do so so

20  you can be close to your family for the next couple of years

21  before you are released.

22         Anything further?

23         MR. DRANOVE:  No, Your Honor.

24         THE DEFENDANT:  Thank you.

25         (Matter concludes.)

GR    OCR    CM    CRR    CSR

# EXHIBIT C

# DOCKET SHEET (CARLOS ECHEVERRY)

CLOSED

## U.S. District Court
## Eastern District of New York (Brooklyn)
## CRIMINAL DOCKET FOR CASE #: 1:00-cr-00515-JG-12

Case title: USA v. Dorado, et al

Date Filed: 05/15/2000

Magistrate judge case number: 1:00-mj-00748

Date Terminated: 06/05/2001

Assigned to: Judge John Gleeson

### Defendant (12)

**Carlos Echeverry**
*TERMINATED: 06/11/2001*

represented by **Richard I. Rosenkrantz**
32 Court Street
Room 408
Brooklyn, NY 11201
(718) 875-9440
*TERMINATED: 05/15/2000*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

**Roy Raymond John Kulcsar**
Law Office of Roy R.Kulcsar
27 Union Square West
Suite 503
New York, NY 10003
(212) 352-1700
Fax: 201-439-1478
Email: rrklaw@aol.com
*TERMINATED: 06/11/2001*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

### Pending Counts

21:846 and 841(b)(1)(A)(ii)(II); 18:3551 et
seq.- CONSPIRACY TO DISTRIBUTE
AND POSSESS WITH INTENT TO
DISTRIBUTE 5 KILOGRAMS OR MORE
OF A SUBSTANCE CONTAINING
COCAINE.
(1ss)

### Disposition

Receives 46 months imprisonment; 5 years
supervised release/w condition; $ 100.00
special assessment.

### Highest Offense Level (Opening)

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| 21:846 and 841(b)(1)(A)(ii)(II); 18:3551 et seq.- CONSPIRACY TO DISTRIBUTE AND POSSESS WITH INTENT TO DISTRIBUTE 5 KILOGRAMS OR MORE OF A SUBSTANCE CONTAINING COCAINE. <br> (1) | Open counts dismissed on government's motion. |
| 21:846 and 841(b)(1)(A)(ii)(II); 18:3551 et seq.- CONSPIRACY TO DISTRIBUTE AND POSSESS WITH INTENT TO DISTRIBUTE 5 KILOGRAMS OR MORE OF A SUBSTANCE CONTAINING COCAINE. <br> (1s) | Open counts dismissed on government's motion. |
| 21:841(a)(1) and 841(b)(1)(A)(ii)(II); 18:2 and 3551 et seq.- DISTRIBUTE AND POSSESS WITH INTENT TO DISTRIBUTE 5 KILOGRAMS OR MORE OF A SUBSTANCE CONTAINING COCAINE. <br> (2ss) | Open counts dismissed on government's motion. |

**Highest Offense Level (Terminated)**

Felony

**Complaints**                                **Disposition**

None

---

**Plaintiff**

**USA**                          represented by **John R. Kroger**
United States Attorney's Office
Criminal Division
One Pierrepont Plaza
Brooklyn, NY 11201
254-6125
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 05/01/2000 | 1 | COMPLAINT as to Gustavo Martinez, Juan Carlos Garcia, Juan Carlos Castillo, Raymond Gutierrez, Carlos Arturo Ruiz, Carlos Echeverry, Ernesto Feliz, Alexis Fernandez-Vasquez, Hector Loaiza [ 1:00-m -748 ] (Polanco, Marcie) (Entered: 05/02/2000) |
| 05/01/2000 | | ARREST of Gustavo Martinez, Juan Carlos Garcia, Juan Carlos Castillo, Raymond Gutierrez, Carlos Arturo Ruiz, Carlos Echeverry, Ernesto Feliz, Alexis Fernandez- |

| | | Vasquez, Hector Loaiza [ 1:00-m -748 ] (Polanco, Marcie) (Entered: 05/02/2000) |
|---|---|---|
| 05/01/2000 | 2 | Magistrate Arraignment as to Gustavo Martinez, Juan Carlos Garcia, Juan Carlos Castillo, Raymond Gutierrez, Carlos Arturo Ruiz, Carlos Echeverry, Ernesto Feliz, Alexis Fernandez-Vasquez held before Magistrate Mann. AUSA: Elaine Banar present, all Defendant informed of rights and all defendants were appointed an attorney. Preceeding taped on 00/69 (215-2706) [ 1:00-m -748 ] (Polanco, Marcie) (Entered: 05/02/2000) |
| 05/01/2000 | 3 | ORDER OF DETENTION as to Gustavo Martinez, Juan Carlos Garcia, Juan Carlos Castillo, Raymond Gutierrez, Carlos Echeverry, Ernesto Feliz, Alexis Fernandez-Vasquez ( Signed by Magistrate Roanne L. Mann , dated: 5/1/00) [ 1:00-m -748 ] (Polanco, Marcie) (Entered: 05/02/2000) |
| 05/01/2000 | | A preliminary hearing set for 2/15/00 at 10:00 a.m. as to Carlos Echeverry. [ 1:00-m -748 ] (Polanco, Marcie) (Entered: 05/02/2000) |
| 05/15/2000 | 9 | NOTICE of Appearance for Carlos Echeverry by Attorney Roy R. Kulcsar [ 1:00-m -748 ] (Mulqueen, Ellen) (Entered: 05/15/2000) |
| 05/15/2000 | | Magistrate Azrack has been selected by random selection to handle any matters that may be referred in this case. (Reddy, Lisa) (Entered: 05/18/2000) |
| 05/15/2000 | 10 | CALENDAR ENTRY as to Carlos Echeverry. Case called on 5/15/00 for grand jury presentment before Magistrate Judge. (Reddy, Lisa) (Entered: 05/18/2000) |
| 05/15/2000 | 11 | INDICTMENT as to Carlos Echeverry (1) count(s) 1. (Reddy, Lisa) (Entered: 05/18/2000) |
| 05/22/2000 | 12 | SUPERSEDING INDICTMENT as to Carlos Echeverry (1) count(s) 1s , Hernan Barona Dorado (2) count(s) 1, Jose Peralto (3) count(s) 1, Julian Morales (4) count(s) 1, Jairo Leon Marulanda-Valencia (5) count(s) 1, Jose Gonzalez (6) count(s) 1, Jose M. Rodriguez (7) count(s) 1, Gustavo Martinez (8) count(s) 1, Juan Carlos Garcia (9) count(s) 1, Manuel F. Fernandez (10) count(s) 1, Raymond Gutierrez (11) count(s) 1, Carlos Arturo Ruiz (12) count(s) 1, Ernesto Feliz (13) count(s) 1, Alexis Fernandez-Vasquez (14) count(s) 1, Hector Fabio Loaiza (15) count(s) 1 . (Reddy, Lisa) (Entered: 05/25/2000) |
| 06/02/2000 | 14 | CALENDAR ENTRY as to Hernan Barona Dorado, Jose Peralto, Julian Morales, Jairo Leon Marulanda-Valencia, Jose E Gonzalez, Jose M. Rodriguez, Gustavo Martinez, Juan Carlos Garcia, Manuel F. Fernandez, Raymond Gutierrez, Carlos Arturo Ruiz, Carlos Echeverry, Ernesto Feliz, Alexis Fernandez-Vasquez, Hector Fabio Loaiza. Case called before Judge John Gleeson on 6/2/00 for arraignment. AUSA Elaine Banar and defendants present with counsel, except dft. Dorado, a fugitive, and dft. Rodriguez, not present. Court Reporter: Holly Driscoll. Defendants plead Not Guilty: Jose (2) count(s) 1, Julian Morales (3) count(s) 1, Jairo Leon Marulanda-Valencia (4) count(s) 1, Jose E Gonzalez (5) count(s) 1, Jose M. Rodriguez (6) count(s) 1, Gustavo Martinez (7) count(s) 1, Juan Carlos Garcia (8) count(s) 1, Manuel F. Fernandez (9) count(s) 1, Raymond Gutierrez (10) count(s) 1, Carlos Arturo Ruiz (11) count(s) 1, Carlos Echeverry (12) count(s) cmp, 1, 1s, Ernesto Feliz (13) count(s) 1 . Atty. David Goldstein standing in for arraignment purposes for attys. James Kasaurous and Ray Kulscar. Next conference set for 7/21/00 at 3:00. (Reddy, Lisa) (Entered: 06/09/2000) |
| 06/16/2000 | 20 | LETTER as to Hernan Dorado, et al., dated 6/16/00 from AUSA Elaine D. Banar to Counsel, providing and requesting discovery. (No attachments). (Reddy, Lisa) (Entered: 06/19/2000) |
| 06/19/2000 | 22 | SUPERSEDING INDICTMENT as to Hernan Barona Dorado (1) count(s) 1s, 2s, 4s, Jose Peralto (2) count(s) 1s, 4s, Julian Morales (3) count(s) 1s, 4s, Jairo Leon Marulanda-Valencia (4) count(s) 1s, 2s, 3s, Jose E Gonzalez (5) count(s) 1s, 4s, Jose M. Rodriguez |

| | | |
|---|---|---|
| | | (6) count(s) 1s, 4s, Gustavo Martinez (7) count(s) 1s, 2s, Juan Carlos Garcia (8) count(s) 1s, Manuel F. Fernandez (9) count(s) 1s, 2s, 3s, Raymond Gutierrez (10) count(s) 1s, 2s, Carlos Arturo Ruiz (11) count(s) 1s, 2s, Carlos Echeverry (12) count(s) 1ss, 2ss, Ernesto Feliz (13) count(s) 1s, 2s, Alexis Fernandez-Vasquez (14) count(s) 1s, 2s, Hector Fabio Loaiza (15) count(s) 1s, 4s . (Reddy, Lisa) (Entered: 06/23/2000) |
| 06/29/2000 | 29 | CALENDAR ENTRY as to Jose Peralto, Julian Morales, Jairo Leon Marulanda-Valencia, Jose E Gonzalez, Jose M. Rodriguez, Gustavo Martinez, Juan Carlos Garcia, Raymond Gutierrez, Carlos Echeverry, Ernesto Feliz, Alexis Fernandez-Vasquez, Hector Fabio Loaiza. Case called before Judge John Gleeson on 6/29/00 for status conference. AUSA Elaine Banar and defendants present with counsel. Court Reporter: Shelly Silverman. Interpreter: Carmen Pascual (Spanish). Case designated complex. Dfts. #9 and 11 to be arraigned on 6/30/00. Discovery to be completed 7/24/00. Defense motions due 9/8/00; government response due 9/22/00; reply due 9/29/00; motion hearing set for 10/13/00 at 2:00. Jury selection and trial set for 11/27/00 at 9:30. (Reddy, Lisa) (Entered: 07/11/2000) |
| 07/05/2000 | 28 | LETTER as to dft. Dorado, et al., dated 6/30/00 from AUSA Elaine D. Banar to Counsel, enclosing additional discovery. (No attachments). (Reddy, Lisa) Modified on 07/06/2000 (Entered: 07/06/2000) |
| 07/18/2000 | 32 | LETTER as to Hernan Dorado, et al., dated 7/14/00 from AUSA Elaine D. Banar to Counsel, enclosing discovery. (No attachments). (Reddy, Lisa) (Entered: 07/25/2000) |
| 07/24/2000 | 31 | (copy) LETTER dated 6/16/00 from AUSA, Elaine Banar, to all counsel, providing discovery. (Asreen, Wendy) (Entered: 07/24/2000) |
| 07/27/2000 | 33 | LETTER as to dft. Dorado, et al., dated 7/26/00 from AUSA Elaine D. Banar to Counsel, enclosing a copy of a fingerprint report as part of the government's ongoing discovery obligations. (No attachments). (Reddy, Lisa) (Entered: 07/31/2000) |
| 08/07/2000 | 37 | LETTER as to dft. Dorado, et. al., dated 8/4/00 from AUSA Elaine D. Banar to Counsel, providing the following discovery: copies of drug records and a notebook seized from Ivette Garcia and additional transcripts of tape-recordings. (No attachments). (Reddy, Lisa) (Entered: 08/08/2000) |
| 08/08/2000 | 38 | Original papers of document number 36, Govt.'s motion for forfeiture of bail, rec'd from chambers. Govt. to re-file this motion. (Vaughn, Terry) (Entered: 08/09/2000) |
| 08/14/2000 | 43 | FEDEX RETURNED as undeliverable. Motion for order forfeiting bail, Declaration, Notice to clerk, and Proposed order sent to Ernesto Feliz returned on 8/14/00. (Reddy, Lisa) (Entered: 08/14/2000) |
| 08/14/2000 | 44 | FEDEX RETURNED as undeliverable. Motion for order forfeiting bail, Declaration, Notice to clerk, and Proposed order sent to Pedro Vasquez returned on 8/14/00. (Reddy, Lisa) (Entered: 08/14/2000) |
| 08/14/2000 | 45 | FEDEX RETURNED as undeliverable. Motion for order forfeiting bail, Declaration, Notice to clerk, and Proposed order sent to Michelle Fermin returned on 8/14/00. (Reddy, Lisa) (Entered: 08/14/2000) |
| 08/15/2000 | 46 | NOTICE of proof of FEDEX delivery to Jose Vasquez, on 8/10/00. (Reddy, Lisa) (Entered: 08/15/2000) |
| 08/16/2000 | 51 | LETTER dated 8/15/00 from AUSA Elaine D. Banar to Counsel, enclosing, pursuant to the government's ongoing discovery obligations, copies of additional drug records seized from dft. Carlos Ruiz after a consent search of his residence. (Reddy, Lisa) (Entered: 08/30/2000) |

| 09/08/2000 | 58 | CALENDAR ENTRY as to Carlos Echeverry. Case called before Judge John Gleeson on 9/8/00 for arraignment. AUSA Elaine Banar and dft. present with counsel Roy Kulscar. Court Reporter: Holly Driscoll. Interpreter: Francisco Olivero (Spanish). Dft. pleads Not Guilty: Carlos Echeverry (12) count(s) 1ss, 2ss . Speedy trial waived from 9/8/00 to 9/27/00. (Reddy, Lisa) (Entered: 09/12/2000) |
|---|---|---|
| 09/21/2000 | 63 | LETTER dated 9/20/00 from AUSA Banar to All Counsel furnishing the discovery - the 4/10/00 statement of Juan Jose Gonzalez. (Lee, Tiffeny) (Entered: 09/25/2000) |
| 09/27/2000 | 67 | CALENDAR ENTRY as to Carlos Echeverry ; Case called before Judge John Gleeson on date of 9/27/00 for Pleading. AUSA Banar; Dft present w/atty Roy Kulcsar, Esq.; Interpreter: Anita Silverio (Spanish); Court Reporter: Marsha Diamond. Dft pleads Guilty: Carlos Echeverry (12) count(s) 1ss ; Setting Sentencing for 2:00 on 12/15/00 for Carlos Echeverry . Dft requests return of property, order entered. (Lee, Tiffeny) (Entered: 10/05/2000) |
| 11/01/2000 | 83 | LETTER dated 10/24/00 from AUSA Banar to Counsel advising that the seized bulk drug evidence will be destroyed 11/10/00. (Lee, Tiffeny) (Entered: 11/01/2000) |
| 11/20/2000 | 98 | LETTER dated 11/17/00 from AUSA Banar to Judge Gleeson providing estimate of trial length. (Lee, Tiffeny) (Entered: 11/22/2000) |
| 12/06/2000 | 106 | LETTER dated 11/17/00 from AUSA Banar to Judge Gleeson estimating that the govt's case will take 8 days. (Lee, Tiffeny) (Entered: 12/07/2000) |
| 01/03/2001 | 131 | INTER-OFFICE MEMO from Stephen L. Brighton, SUSPO to Judge Gleeson dated 12/27/00 regarding Delay in Presentence Investigation. (Lee, Tiffeny) (Entered: 01/04/2001) |
| 04/30/2001 | 136 | SEALED DOCUMENT: Letter dated 4/24/01. Placed in vault. (DiLorenzo, Krista) (Entered: 05/02/2001) |
| 05/15/2001 | 140 | LETTER dated 5/5/01 from Alan Nelson, Esq. to Judge Gleeson requesting a downward departure as to dft Miguel Medina. (Lee, Tiffeny) (Entered: 05/16/2001) |
| 05/18/2001 | 142 | LETTER dated 5/0/01 from Alan Nelson, Esq. to Judge Gleeson requesting adjournment of 5/25/01 sentencing to 6/1/01. (Lee, Tiffeny) (Entered: 05/21/2001) |
| 05/18/2001 | 143 | LETTER dated 5/14/01 from Alan Nelson, Esq. to Judge Gleeson requesting adjournment of 5/25/01 sentencing to 6/15/01. (Lee, Tiffeny) (Entered: 05/21/2001) |
| 05/21/2001 | | ENDORSED ORDER: Signed by Judge John Gleeson , on 5/17/01. The sentence is adjourned to 6.8.01 @ 2:00. So ordered. Signed Judge John Gleesion. on 5/17/01. (Lee, Tiffeny) (Entered: 05/21/2001) |
| 05/23/2001 | 147 | SEALED DOCUMENT/Letter placed in vault. (Lee, Tiffeny) (Entered: 05/23/2001) |
| 06/05/2001 | 150 | CALENDAR ENTRY as to Carlos Echeverry; Case called before Judge John Gleeson on date of 6/5/01 for Sentencing. AUSA Kowalski; Dft w/atty Roy Kulcsar; Span Int: A. Silverio-Sworn; Court Reporter: Burt Sulzer. Receives 46 months imprisonment; 5 yrs s/r; $100 s/a. If deported, dft may not re-enter the US illegally. Court recommends dft be designated to the Coleman Corr Facility if FL, if consistent w/BOP policy. (Lee, Tiffeny) (Entered: 06/11/2001) |
| 06/05/2001 | | Sentencing held Carlos Echeverry (12) count(s) 1ss. (Lee, Tiffeny) (Entered: 06/11/2001) |
| 06/11/2001 | 151 | JUDGMENT Carlos Echeverry (12) count(s) 1ss. Receives 46 months imprisonment; 5 years supervised release/w condition that if the dft is deported,he may not re-enter the U.S. illegally; $ 100.00 special assessment. Court recommends that the dft be designated to the Coleman Correctional Facility in Florida, if this is consistent w/BOP policy. Open |

| | | |
|---|---|---|
| | | counts are dismissed on govt's motion. (Signed by Judge John Gleeson, on 6/5/01) c/m (Lee, Tiffeny) (Webb, Elizabeth). (Entered: 06/11/2001) |
| 06/11/2001 | | DISMISSAL of Count(s) on Government Motion as to Carlos Echeverry, party Carlos Echeverry. Counts Dismissed: Carlos Echeverry (12) count(s) 1s, 1, 2ss. (Lee, Tiffeny) (Entered: 06/11/2001) |
| 06/11/2001 | 152 | SEALED DOCUMENT placed in vault. (Lee, Tiffeny) (Entered: 06/11/2001) |
| 07/11/2001 | | Certified copy of docket sheet sent to USCA. [164-1] appeal (McGee, Maryann) (Entered: 07/11/2001) |
| 08/01/2001 | | Certified copy of docket sheet sent to USCA. [168-1] appeal. (deft Loaiza) (Glenn, Marilyn) (Entered: 08/01/2001) |
| 10/15/2001 | 186 | LETTER dated 10/12/01 from Judge Gleeson to Mr. Fernandez, thanking him for his concernduring the 9/11/01 tragic events. (DiLorenzo, Krista) (Entered: 10/15/2001) |
| 10/15/2001 | 187 | LETTER dated 9/28/01 from Rafael A. Fernandez to Judge Gleeson, regarding the "awful tragedy" of the WTC. (DiLorenzo, Krista) (Entered: 10/15/2001) |
| 11/30/2001 | 196 | LETTER dated 11/19/01 from Peter Till to Mary Gonzalez, confirming the adjournment of the 11/21/01 conf. for 11/26/01 at 10:30. (DiLorenzo, Krista) (Entered: 12/06/2001) |
| 12/06/2001 | 195 | SEALED DOCUMENT placed in vault. (DiLorenzo, Krista) (Entered: 12/06/2001) |
| 12/11/2001 | 199 | SEALED DOCUMENT placed in vault. (DiLorenzo, Krista) (Entered: 12/12/2001) |
| 01/31/2002 | 206 | ORDER directing the Gov't to forward a copy of this letter immediately to the Warden of MDC and to provide a response in writing no later than 02.08.02. (Signed by Judge John Gleeson on 01.28.02). See letter dated 01.14.02 from Samantha Cruz-Fernandez to USDJ Gleeson. C/M by Chambers. (Noh, Kenneth) (Entered: 01/31/2002) |
| 02/07/2002 | 207 | LETTER dated 01.29.02 from Peter W. Till to USDJ Gleeson confirming that the sentencing has been adjourned from 02.01.02 to 02.22.02 @ 2pm. (Noh, Kenneth) (Entered: 02/07/2002) |
| 01/30/2003 | 238 | LETTER dated 12/26/02 from Ernesto Feliz to Judge Gleeson, in lieu of a formal motion. (DiLorenzo, Krista) (Entered: 01/30/2003) |
| 05/17/2006 | 261 | Sealed Letter placed in vault as per order of Mag. Azrack. (Piper, Francine) (Entered: 05/17/2006) |
| 05/17/2006 | 262 | SEALED ENDORSED ORDER placed in vault as per order of Mag. Azrack.(Piper, Francine) (Entered: 05/17/2006) |
| 05/19/2006 | 263 | Sealed Letter placed in vault as per order of Mag. Azrack. (Piper, Francine) (Entered: 05/19/2006) |
| 05/19/2006 | 264 | SEALED ENDORSED ORDER placed in vault as per order of Mag. Azrack. (Piper, Francine) (Entered: 05/19/2006) |

DOCKET SHEET (RAYMOND GUTIERREZ)

# EXHIBIT D

# DOCKET SHEET (RAYMOND GUTIERREZ)

## U.S. District Court
### Eastern District of New York (Brooklyn)
### CRIMINAL DOCKET FOR CASE #: 1:00-cr-00515-JG-10

Case title: USA v. Dorado, et al

Date Filed: 05/15/2000

Date Terminated: 06/07/2001

Assigned to: Judge John Gleeson

### Defendant (10)

**Raymond Gutierrez**
*TERMINATED: 06/13/2001*

represented by **Alan M. Nelson**
Alan Nelson Esq
3000 Marcus Avenue
Lake Success, NY 11042
(516) 328-6200
Fax: 516-328-6354
Email: anelsonlaw@aol.com
*TERMINATED: 06/13/2001*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

### Pending Counts

21:846 and 841(b)(1)(A)(ii)(II); 18:3551 et
seq.- CONSPIRACY TO DISTRIBUTE
AND POSSESS WITH INTENT TO
DISTRIBUTE 5 KILOGRAMS OR MORE
OF A SUBSTANCE CONTAINING
COCAINE.
(1s)

### Disposition

Receives 44 months imprisonment; 5 years
supervised release w/conditions; $100.00
special assessment.

### Highest Offense Level (Opening)

Felony

### Terminated Counts

21:846 and 841(b)(1)(A)(ii)(II); 18:3551 et
seq.- CONSPIRACY TO DISTRIBUTE
AND POSSESS WITH INTENT TO
DISTRIBUTE 5 KILOGRAMS OR MORE
OF A SUBSTANCE CONTAINING
COCAINE.
(1)

21:841(a)(1) and 841(b)(1)(A)(ii)(II); 18:2
and 3551 et seq.- DISTRIBUTE AND
POSSESS WITH INTENT TO

### Disposition

Dismissed on government's motion.

Dismissed on government's motion.

DISTRIBUTE 5 KILOGRAMS OR MORE
OF A SUBSTANCE CONTAINING
COCAINE.
(2s)

### Highest Offense Level (Terminated)

Felony

### Complaints                                     ### Disposition

None

---

### Plaintiff

**USA**                                      represented by **John R. Kroger**
                                                    United States Attorney's Office
                                                    Criminal Division
                                                    One Pierrepont Plaza
                                                    Brooklyn, NY 11201
                                                    254-6125
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 05/15/2000 | | Magistrate Azrack has been selected by random selection to handle any matters that may be referred in this case. (Reddy, Lisa) (Entered: 05/18/2000) |
| 05/22/2000 | 12 | SUPERSEDING INDICTMENT as to Carlos Echeverry (1) count(s) 1s , Hernan Barona Dorado (2) count(s) 1, Jose Peralto (3) count(s) 1, Julian Morales (4) count(s) 1, Jairo Leon Marulanda-Valencia (5) count(s) 1, Jose Gonzalez (6) count(s) 1, Jose M. Rodriguez (7) count(s) 1, Gustavo Martinez (8) count(s) 1, Juan Carlos Garcia (9) count(s) 1, Manuel F. Fernandez (10) count(s) 1, Raymond Gutierrez (11) count(s) 1, Carlos Arturo Ruiz (12) count(s) 1, Ernesto Feliz (13) count(s) 1, Alexis Fernandez-Vasquez (14) count(s) 1, Hector Fabio Loaiza (15) count(s) 1 . (Reddy, Lisa) (Entered: 05/25/2000) |
| 06/02/2000 | 14 | CALENDAR ENTRY as to Hernan Barona Dorado, Jose Peralto, Julian Morales, Jairo Leon Marulanda-Valencia, Jose E Gonzalez, Jose M. Rodriguez, Gustavo Martinez, Juan Carlos Garcia, Manuel F. Fernandez, Raymond Gutierrez, Carlos Arturo Ruiz, Carlos Echeverry, Ernesto Feliz, Alexis Fernandez-Vasquez, Hector Fabio Loaiza. Case called before Judge John Gleeson on 6/2/00 for arraignment. AUSA Elaine Banar and defendants present with counsel, except dft. Dorado, a fugitive, and dft. Rodriguez, not present. Court Reporter: Holly Driscoll. Defendants plead Not Guilty: Jose (2) count(s) 1, Julian Morales (3) count(s) 1, Jairo Leon Marulanda-Valencia (4) count(s) 1, Jose E Gonzalez (5) count(s) 1, Jose M. Rodriguez (6) count(s) 1, Gustavo Martinez (7) count(s) 1, Juan Carlos Garcia (8) count(s) 1, Manuel F. Fernandez (9) count(s) 1, Raymond Gutierrez (10) count(s) 1, Carlos Arturo Ruiz (11) count(s) 1, Carlos Echeverry (12) count(s) cmp, 1, 1s, Ernesto Feliz (13) count(s) 1 . Atty. David Goldstein standing in for arraignment purposes for attys. James Kasaurous and Ray Kulscar. Next conference set for 7/21/00 at 3:00. (Reddy, Lisa) (Entered: 06/09/2000) |
| 06/16/2000 | 20 | LETTER as to Hernan Dorado, et al., dated 6/16/00 from AUSA Elaine D. Banar to Counsel, providing and requesting discovery. (No attachments). (Reddy, Lisa) (Entered: |

| | | 06/19/2000) |
|---|---|---|
| 06/19/2000 | 22 | SUPERSEDING INDICTMENT as to Hernan Barona Dorado (1) count(s) 1s, 2s, 4s, Jose Peralto (2) count(s) 1s, 4s, Julian Morales (3) count(s) 1s, 4s, Jairo Leon Marulanda-Valencia (4) count(s) 1s, 2s, 3s, Jose E Gonzalez (5) count(s) 1s, 4s, Jose M. Rodriguez (6) count(s) 1s, 4s, Gustavo Martinez (7) count(s) 1s, 2s, Juan Carlos Garcia (8) count(s) 1s, Manuel F. Fernandez (9) count(s) 1s, 2s, 3s, Raymond Gutierrez (10) count(s) 1s, 2s, Carlos Arturo Ruiz (11) count(s) 1s, 2s, Carlos Echeverry (12) count(s) 1ss, 2ss, Ernesto Feliz (13) count(s) 1s, 2s, Alexis Fernandez-Vasquez (14) count(s) 1s, 2s; Hector Fabio Loaiza (15) count(s) 1s, 4s . (Reddy, Lisa) (Entered: 06/23/2000) |
| 06/29/2000 | 29 | CALENDAR ENTRY as to Jose Peralto, Julian Morales, Jairo Leon Marulanda-Valencia, Jose E Gonzalez, Jose M. Rodriguez, Gustavo Martinez, Juan Carlos Garcia, Raymond Gutierrez, Carlos Echeverry, Ernesto Feliz, Alexis Fernandez-Vasquez, Hector Fabio Loaiza. Case called before Judge John Gleeson on 6/29/00 for status conference. AUSA Elaine Banar and defendants present with counsel. Court Reporter: Shelly Silverman. Interpreter: Carmen Pascual (Spanish). Case designated complex. Dfts. #9 and 11 to be arraigned on 6/30/00. Discovery to be completed 7/24/00. Defense motions due 9/8/00; government response due 9/22/00; reply due 9/29/00; motion hearing set for 10/13/00 at 2:00. Jury selection and trial set for 11/27/00 at 9:30. (Reddy, Lisa) (Entered: 07/11/2000) |
| 07/05/2000 | 28 | LETTER as to dft. Dorado, et al., dated 6/30/00 from AUSA Elaine D. Banar to Counsel, enclosing additional discovery. (No attachments). (Reddy, Lisa) Modified on 07/06/2000 (Entered: 07/06/2000) |
| 07/18/2000 | 32 | LETTER as to Hernan Dorado, et al., dated 7/14/00 from AUSA Elaine D. Banar to Counsel, enclosing discovery. (No attachments). (Reddy, Lisa) (Entered: 07/25/2000) |
| 07/24/2000 | 31 | (copy) LETTER dated 6/16/00 from AUSA, Elaine Banar, to all counsel, providing discovery. (Asreen, Wendy) (Entered: 07/24/2000) |
| 07/27/2000 | 33 | LETTER as to dft. Dorado, et al., dated 7/26/00 from AUSA Elaine D. Banar to Counsel, enclosing a copy of a fingerprint report as part of the government's ongoing discovery obligations. (No attachments). (Reddy, Lisa) (Entered: 07/31/2000) |
| 08/07/2000 | 37 | LETTER as to dft. Dorado, et. al., dated 8/4/00 from AUSA Elaine D. Banar to Counsel, providing the following discovery: copies of drug records and a notebook seized from Ivette Garcia and additional transcripts of tape-recordings. (No attachments). (Reddy, Lisa) (Entered: 08/08/2000) |
| 08/08/2000 | 38 | Original papers of document number 36, Govt.'s motion for forfeiture of bail, rec'd. from chambers. Govt. to re-file this motion. (Vaughn, Terry) (Entered: 08/09/2000) |
| 08/14/2000 | 43 | FEDEX RETURNED as undeliverable. Motion for order forfeiting bail, Declaration, Notice to clerk, and Proposed order sent to Ernesto Feliz returned on 8/14/00. (Reddy, Lisa) (Entered: 08/14/2000) |
| 08/14/2000 | 44 | FEDEX RETURNED as undeliverable. Motion for order forfeiting bail, Declaration, Notice to clerk, and Proposed order sent to Pedro Vasquez returned on 8/14/00. (Reddy, Lisa) (Entered: 08/14/2000) |
| 08/14/2000 | 45 | FEDEX RETURNED as undeliverable. Motion for order forfeiting bail, Declaration, Notice to clerk, and Proposed order sent to Michelle Fermin returned on 8/14/00. (Reddy, Lisa) (Entered: 08/14/2000) |
| 08/15/2000 | 46 | NOTICE of proof of FEDEX delivery to Jose Vasquez, on 8/10/00. (Reddy, Lisa) (Entered: 08/15/2000) |

| 08/16/2000 | 51 | LETTER dated 8/15/00 from AUSA Elaine D. Banar to Counsel, enclosing, pursuant to the government's ongoing discovery obligations, copies of additional drug records seized from dft. Carlos Ruiz after a consent search of his residence. (Reddy, Lisa) (Entered: 08/30/2000) |
| 08/16/2000 | 52 | CALENDAR ENTRY as to Raymond Gutierrez. Case called before Magistrate Joan M. Azrack on 8/16/00 for pleading. AUSA Elaine Banar and defendant present with counsel Alan Nelson. Tape # 00/59 (485-1287). Dft. withdraws not guilty plea and pleads Guilty: Raymond Gutierrez (10) count(s) 1s . Sentencing set for 11/30/00 at 2:00. (Reddy, Lisa) (Entered: 08/30/2000) |
| 08/16/2000 | 53 | ORDER as to Raymond Gutierrez, referring the guilty plea to Magistrate Judge Azrack. (Signed by Judge John Gleeson on 8/8/00). (Reddy, Lisa) (Entered: 08/30/2000) |
| 09/21/2000 | 63 | LETTER dated 9/20/00 from AUSA Banar to All Counsel furnishing the discovery - the 4/10/00 statement of Juan Jose Gonzalez. (Lee, Tiffeny) (Entered: 09/25/2000) |
| 09/28/2000 | 65 | TRANSCRIPT for Pleading before USMJ Azrack filed in case as to Raymond Gutierrez for dates of 8/16/00 ; Court Transcriber: Rosalie Lombardi Transcription Plus, II (Lee, Tiffeny) (Entered: 09/28/2000) |
| 11/01/2000 | 83 | LETTER dated 10/24/00 from AUSA Banar to Counsel advising that the seized bulk drug evidence will be destroyed 11/10/00. (Lee, Tiffeny) (Entered: 11/01/2000) |
| 11/20/2000 | 98 | LETTER dated 11/17/00 from AUSA Banar to Judge Gleeson providing estimate of trial length. (Lee, Tiffeny) (Entered: 11/22/2000) |
| 12/06/2000 | 106 | LETTER dated 11/17/00 from AUSA Banar to Judge Gleeson estimating that the govt's case will take 8 days. (Lee, Tiffeny) (Entered: 12/07/2000) |
| 01/03/2001 | 131 | INTER-OFFICE MEMO from Stephen L. Brighton, SUSPO to Judge Gleeson dated 12/27/00 regarding Delay in Presentence Investigation. (Lee, Tiffeny) (Entered: 01/04/2001) |
| 04/30/2001 | 136 | SEALED DOCUMENT: Letter dated 4/24/01. Placed in vault. (DiLorenzo, Krista) (Entered: 05/02/2001) |
| 05/15/2001 | 140 | LETTER dated 5/5/01 from Alan Nelson, Esq. to Judge Gleeson requesting a downward departure as to dft Miguel Medina. (Lee, Tiffeny) (Entered: 05/16/2001) |
| 05/18/2001 | 142 | LETTER dated 5/0/01 from Alan Nelson, Esq. to Judge Gleeson requesting adjournment of 5/25/01 sentencing to 6/1/01. (Lee, Tiffeny) (Entered: 05/21/2001) |
| 05/18/2001 | 143 | LETTER dated 5/14/01 from Alan Nelson, Esq. to Judge Gleeson requesting adjourment of 5/25/01 sentencing to 6/15/01. (Lee, Tiffeny) (Entered: 05/21/2001) |
| 05/21/2001 | | ENDORSED ORDER: Signed by Judge John Gleeson , on 5/17/01. The sentence is adjourned to 6.8.01 @ 2:00. So ordered. Signed Judge John Gleesion. on 5/17/01. (Lee, Tiffeny) (Entered: 05/21/2001) |
| 05/23/2001 | 147 | SEALED DOCUMENT/Letter placed in vault. (Lee, Tiffeny) (Entered: 05/23/2001) |
| 06/07/2001 | 153 | CALENDAR ENTRY as to Raymond Gutierrez; Case called before Judge John Gleeson on date of 6/7/01 for Sentencing. AUSA Kowalski; Dft w/atty Alan Nelson, Esq; Court Reporter: Burt Sulzer. Sentenced on ct 1. 44 months imprisonment; 5 yrs s/r; $100 s/a. Court recommends that the dft be placed in the 500 hr drug rehabilitation program. Special cond of the supervised release that the dft receive substance abuse treatment as directed by the Prob Dept. If deported,the dft may not re-enter the US illegally. (Lee, Tiffeny) (Entered: 06/13/2001) |

| 06/07/2001 | | | Sentencing held Raymond Gutierrez (10) count(s) 1s. (Lee, Tiffany) (Entered: 06/13/2001) |
|---|---|---|---|
| 06/11/2001 | 152 | | SEALED DOCUMENT placed in vault. (Lee, Tiffany) (Entered: 06/11/2001) |
| 06/13/2001 | 154 | | JUDGMENT Raymond Gutierrez (10) count(s) 1s. Receives 44 months imprisonment; 5 years supervised release with the conditions that if the dft is deported, he may not re-enter the US illegally and the dft is to receive substance abuse treatment as directed by the Prob Dept; $100.00 special assessment. The Court recommends that the dft be placed in the 500 hour drug rehabilitation probgram w/i the correctional facility. (Signed by Judge John Gleeson, on 6/7/01) {c/m} (Lee, Tiffany) Modified on 06/13/2001 (Entered: 06/13/2001) |
| 06/13/2001 | | | DISMISSAL of Count(s) on Government Motion as to Raymond Gutierrez party Raymond Gutierrez. Counts Dismissed: Raymond Gutierrez (10) count(s) 1, 2s. (Lee, Tiffany) (Entered: 06/13/2001) |
| 07/11/2001 | | | Certified copy of docket sheet sent to USCA. [164-1] appeal (McGee, Maryann) (Entered: 07/11/2001) |
| 08/01/2001 | | | Certified copy of docket sheet sent to USCA. [168-1] appeal. (deft Loaiza) (Glenn, Marilyn) (Entered: 08/01/2001) |
| 10/15/2001 | 186 | | LETTER dated 10/12/01 from Judge Gleeson to Mr. Fernandez, thanking him for his concernduring the 9/11/01 tragic events. (DiLorenzo, Krista) (Entered: 10/15/2001) |
| 10/15/2001 | 187 | | LETTER dated 9/28/01 from Rafael A. Fernandez to Judge Gleeson, regarding the "awful tragedy" of the WTC. (DiLorenzo, Krista) (Entered: 10/15/2001) |
| 11/30/2001 | 196 | | LETTER dated 11/19/01 from Peter Till to Mary Gonzalez, confirming the adjournment of the 11/21/01 conf. for 11/26/01 at 10:30. (DiLorenzo, Krista) (Entered: 12/06/2001) |
| 12/06/2001 | 195 | | SEALED DOCUMENT placed in vault. (DiLorenzo, Krista) (Entered: 12/06/2001) |
| 12/11/2001 | 199 | | SEALED DOCUMENT placed in vault. (DiLorenzo, Krista) (Entered: 12/12/2001) |
| 01/31/2002 | 206 | | ORDER directing the Gov't to forward a copy of this letter immediately to the Warden of MDC and to provide a response in writing no later than 02.08.02. (Signed by Judge John Gleeson on 01.28.02). See letter dated 01.14.02 from Samantha Cruz-Fernandez to USDJ Gleeson. C/M by Chambers. (Noh, Kenneth) (Entered: 01/31/2002) |
| 02/07/2002 | 207 | | LETTER dated 01.29.02 from Peter W. Till to USDJ Gleeson confirming that the sentencing has been adjourned from 02.01.02 to 02.22.02 @ 2pm. (Noh, Kenneth) (Entered: 02/07/2002) |
| 01/30/2003 | 238 | | LETTER dated 12/26/02 from Ernesto Feliz to Judge Gleeson, in lieu of a formal motion. (DiLorenzo, Krista) (Entered: 01/30/2003) |
| 05/17/2006 | 261 | | Sealed Letter placed in vault as per order of Mag. Azrack. (Piper, Francine) (Entered: 05/17/2006) |
| 05/17/2006 | 262 | | SEALED ENDORSED ORDER placed in vault as per order of Mag. Azrack.(Piper, Francine) (Entered: 05/17/2006) |
| 05/19/2006 | 263 | | Sealed Letter placed in vault as per order of Mag. Azrack. (Piper, Francine) (Entered: 05/19/2006) |
| 05/19/2006 | 264 | | SEALED ENDORSED ORDER placed in vault as per order of Mag. Azrack. (Piper, Francine) (Entered: 05/19/2006) |

# EXHIBIT E

## DOCKET SHEET (CARLOS ARTURO RUIZ)

## U.S. District Court
## Eastern District of New York (Brooklyn)
## CRIMINAL DOCKET FOR CASE #: 1:00-cr-00515-JG-11

Case title: USA v. Dorado, et al

Date Filed: 05/15/2000

Date Terminated: 06/08/2001

Assigned to: Judge John Gleeson

### Defendant (11)

**Carlos Arturo Ruiz**
*TERMINATED: 06/13/2001*

represented by **Ismael Gonzalez**
Ismael Gonzalez & Associates P.C.
152 West 36th Street
Ste. 202
New York, NY 10018
212-465-1500
Fax: 212-244-5440
*TERMINATED: 06/13/2001*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

### Pending Counts

21:846 and 841(b)(1)(A)(ii)(II); 18:3551 et
seq.- CONSPIRACY TO DISTRIBUTE
AND POSSESS WITH INTENT TO
DISTRIBUTE 5 KILOGRAMS OR MORE
OF A SUBSTANCE CONTAINING
COCAINE.
(1s)

### Disposition

Receives 62 months imprisonment; 5 years
supervised release w/conditions; $100.00
special assessment.

### Highest Offense Level (Opening)

Felony

### Terminated Counts

21:846 and 841(b)(1)(A)(ii)(II); 18:3551 et
seq.- CONSPIRACY TO DISTRIBUTE
AND POSSESS WITH INTENT TO
DISTRIBUTE 5 KILOGRAMS OR MORE
OF A SUBSTANCE CONTAINING
COCAINE.
(1)

21:846 and 841 (b)(1)(A)(ii)(II); 18:3551 et
seq. - Conspiracy to distribute and possess
with the intent to distribute five kilograms

### Disposition

Dismissed on government's motion.

Dismissed on government's motion.

| | | | |
|---|---|---|---|
| | | | Echeverry, Ernesto Feliz, Alexis Fernandez-Vasquez, Hector Fabio Loaiza. Case called before Judge John Gleeson on 6/2/00 for arraignment. AUSA Elaine Banar and defendants present with counsel, except dft. Dorado, a fugitive, and dft. Rodriguez, not present. Court Reporter: Holly Driscoll. Defendants plead Not Guilty: Jose (2) count(s) 1, Julian Morales (3) count(s) 1, Jairo Leon Marulanda-Valencia (4) count(s) 1, Jose E Gonzalez (5) count(s) 1, Jose M. Rodriguez (6) count(s) 1, Gustavo Martinez (7) count(s) 1, Juan Carlos Garcia (8) count(s) 1, Manuel F. Fernandez (9) count(s) 1, Raymond Gutierrez (10) count(s) 1, Carlos Arturo Ruiz (11) count(s) 1, Carlos Echeverry (12) count(s) cmp, 1, 1s, Ernesto Feliz (13) count(s) 1 . Atty. David Goldstein standing in for arraignment purposes for attys. James Kasaurous and Ray Kulscar. Next conference set for 7/21/00 at 3:00. (Reddy, Lisa) (Entered: 06/09/2000) |
| 06/16/2000 | 20 | | LETTER as to Hernan Dorado, et al., dated 6/16/00 from AUSA Elaine D. Banar to Counsel, providing and requesting discovery. (No attachments). (Reddy, Lisa) (Entered: 06/19/2000) |
| 06/19/2000 | 22 | | SUPERSEDING INDICTMENT as to Hernan Barona Dorado (1) count(s) 1s, 2s, 4s, Jose Peralto (2) count(s) 1s, 4s, Julian Morales (3) count(s) 1s, 4s, Jairo Leon Marulanda-Valencia (4) count(s) 1s, 2s, 3s, Jose E Gonzalez (5) count(s) 1s, 4s, Jose M. Rodriguez (6) count(s) 1s, 4s, Gustavo Martinez (7) count(s) 1s, 2s, Juan Carlos Garcia (8) count(s) 1s, Manuel F. Fernandez (9) count(s) 1s, 2s, 3s, Raymond Gutierrez (10) count(s) 1s, 2s, Carlos Arturo Ruiz (11) count(s) 1s, 2s, Carlos Echeverry (12) count(s) 1ss, 2ss, Ernesto Feliz (13) count(s) 1s, 2s, Alexis Fernandez-Vasquez (14) count(s) 1s, 2s, Hector Fabio Loaiza (15) count(s) 1s, 4s . (Reddy, Lisa) (Entered: 06/23/2000) |
| 06/19/2000 | 23 | | NOTICE of Appearance for Carlos Arturo Ruiz by Attorney Ismael Gonzalez. (Reddy, Lisa) (Entered: 06/23/2000) |
| 06/22/2000 | 21 | | NOTICE of Appearance for Carlos Arturo Ruiz by Attorney Ismael Gonzalez. (Reddy, Lisa) (Entered: 06/23/2000) |
| 06/30/2000 | 30 | | CALENDAR ENTRY as to Manuel F. Fernandez, Carlos Arturo Ruiz. Case called before Judge John Gleeson on 6/30/00 for status conference. AUSA Elaine Banar and defendants present with counsel. Court Reporter: Marsha Diamond. Interpreter: Parron (Spanish). Discovery to be completed 7/24/00. Defense motion due 9/8/00; government response due 9/22/00; reply by 9/29/00. Motion hearing if necessary set for 10/13/00 at 2:00. Jury selection and trial set for 11/27/00 at 9:30. (Reddy, Lisa) (Entered: 07/11/2000) |
| 07/05/2000 | 28 | | LETTER as to dft. Dorado, et al., dated 6/30/00 from AUSA Elaine D. Banar to Counsel, enclosing additional discovery. (No attachments). (Reddy, Lisa) Modified on 07/06/2000 (Entered: 07/06/2000) |
| 07/18/2000 | 32 | | LETTER as to Hernan Dorado, et al., dated 7/14/00 from AUSA Elaine D. Banar to Counsel, enclosing discovery. (No attachments). (Reddy, Lisa) (Entered: 07/25/2000) |
| 07/24/2000 | 31 | | (copy) LETTER dated 6/16/00 from AUSA, Elaine Banar, to all counsel, providing discovery. (Asreen, Wendy) (Entered: 07/24/2000) |
| 07/27/2000 | 33 | | LETTER as to dft. Dorado, et al., dated 7/26/00 from AUSA Elaine D. Banar to Counsel, enclosing a copy of a fingerprint report as part of the government's ongoing discovery obligations. (No attachments). (Reddy, Lisa) (Entered: 07/31/2000) |
| 08/07/2000 | 37 | | LETTER as to dft. Dorado, et. al., dated 8/4/00 from AUSA Elaine D. Banar to Counsel, providing the following discovery: copies of drug records and a notebook seized from Ivette Garcia and additional transcripts of tape-recordings. (No attachments). (Reddy, Lisa) (Entered: 08/08/2000) |

| 08/08/2000 | 38 | Original papers of document number 36, Govt.'s motion for forfeiture of bail, rec'd. from chambers. Govt. to re-file this motion. (Vaughn, Terry) (Entered: 08/09/2000) |
| 08/10/2000 | 49 | CALENDAR ENTRY as to Carlos Arturo Ruiz. Case called before Magistrate Robert M. Levy on 8/10/00 for bail application. AUSA Elaine Banar and defendant present with counsel Ismael Gonzalez. Tape # 2000/104 (5514-6940); 2000/102 (5293-6984). [48-1] Bail application denied. (Reddy, Lisa) (Entered: 08/15/2000) |
| 08/14/2000 | 43 | FEDEX RETURNED as undeliverable. Motion for order forfeiting bail, Declaration, Notice to clerk, and Proposed order sent to Ernesto Feliz returned on 8/14/00. (Reddy, Lisa) (Entered: 08/14/2000) |
| 08/14/2000 | 44 | FEDEX RETURNED as undeliverable. Motion for order forfeiting bail, Declaration, Notice to clerk, and Proposed order sent to Pedro Vasquez returned on 8/14/00. (Reddy, Lisa) (Entered: 08/14/2000) |
| 08/14/2000 | 45 | FEDEX RETURNED as undeliverable. Motion for order forfeiting bail, Declaration, Notice to clerk, and Proposed order sent to Michelle Fermin returned on 8/14/00. (Reddy, Lisa) (Entered: 08/14/2000) |
| 08/15/2000 | 46 | NOTICE of proof of FEDEX delivery to Jose Vasquez, on 8/10/00. (Reddy, Lisa) (Entered: 08/15/2000) |
| 08/15/2000 | 48 | MOTION by Carlos Arturo Ruiz to set Bond . Hearing set for 8/11/00 re: [48-1] motion. (Reddy, Lisa) (Entered: 08/15/2000) |
| 08/16/2000 | 51 | LETTER dated 8/15/00 from AUSA Elaine D. Banar to Counsel, enclosing, pursuant to the government's ongoing discovery obligations, copies of additional drug records seized from dft. Carlos Ruiz after a consent search of his residence. (Reddy, Lisa) (Entered: 08/30/2000) |
| 09/12/2000 | 57 | ORDER as to Carlos Arturo Ruiz, granting dft.'s request to extend time to file his pretrial motion until 9/12/00 . (Signed by Judge John Gleeson on 9/8/00). C/M by Chambers. See letter dated 9/8/00 from Ismael Gonzalez to Judge Gleeson. (Reddy, Lisa) (Entered: 09/12/2000) |
| 09/21/2000 | 60 | ENDORSED ORDER as to Carlos Arturo Ruiz on letter dated 9/15/00 from Ismael Gonzalez, Esq. to Judge Gleeson granting application to file the motion out of time. Signed by Judge John Gleeson , on 9/18/00. (Lee, Tiffeny) (Entered: 09/21/2000) |
| 09/21/2000 | 63 | LETTER dated 9/20/00 from AUSA Banar to All Counsel furnishing the discovery - the 4/10/00 statement of Juan Jose Gonzalez. (Lee, Tiffeny) (Entered: 09/25/2000) |
| 10/02/2000 | 66 | ORDER as to Carlos Arturo Ruiz, granting dft.'s request to extend time to file a response to the Government's Memo in Opposition to dft.'s pretrial motions until 10/5 or 10/6 . (Signed by Judge John Gleeson on 9/29/00). Copies faxed by Chambers. (Reddy, Lisa) (Entered: 10/02/2000) |
| 10/04/2000 | 68 | LETTER dated 10/4/00 from AUSA Banar to Counsel furnishing additional draft transcripts. (Lee, Tiffeny) (Entered: 10/06/2000) |
| 10/13/2000 | 74 | CALENDAR ENTRY as to Jose E Gonzalez, Carlos Arturo Ruiz ; Case called before Judge John Gleeson on date of 10/133/00 for Suppression Hearing. AUSA Banar; Dfts present w/attys in order B. Alan Seidler, Esq. and Ismael Gonzalez; ESR: Diane Pereira. Hearing held; Following witnesses sworn, direct and cross examined: Ean Tziazas, Joseph Calvacca, Thomas Metcalf. Cont'd to 10/17/00 at 1:00. (Lee, Tiffeny) Modified on 10/18/2000 (Entered: 10/18/2000) |

| | | |
|---|---|---|
| 10/17/2000 | 79 | CALENDAR ENTRY as to Juan Jose Gonzalez, Carlos Arturo Ruiz ; Case called before Judge John Gleeson on date of for Suppression Hearing. AUSA Banar; Dfts present w/attys in order as listed B. Alan Seidler, Esq and Ismael Gonzalez, Esq; ESR: Fred Guerino. Witness Mildred Marin, sworn. Direct exam by Elaine Banar, cross by Seidler and Gonzalez; Witness Anthony Rambazis, sworn, DX by Banar and CX by Gonzalez; Govt rests Argument by the parties will be heard 10/27/00 at 9:30. (Lee, Tiffeny) (Entered: 10/26/2000) |
| 10/31/2000 | 82 | LETTER from AUSA Banar to Judge Gleeson advising that the gov't may seek to admit similar act evidence against Carlos Ruiz. (Lee, Tiffeny) (Entered: 11/01/2000) |
| 11/01/2000 | 83 | LETTER dated 10/24/00 from AUSA Banar to Counsel advising that the seized bulk drug evidence will be destroyed 11/10/00. (Lee, Tiffeny) (Entered: 11/01/2000) |
| 11/14/2000 | 96 | LETTER dated 11/13/00 from AUSA Banar to Counsel furnishing additional discovery-draft transcripts. (Lee, Tiffeny) (Entered: 11/16/2000) |
| 11/20/2000 | 98 | LETTER dated 11/17/00 from AUSA Banar to Judge Gleeson providing estimate of trial length. (Lee, Tiffeny) (Entered: 11/22/2000) |
| 11/22/2000 | 99 | LETTER dated 11/17/00 from AUSA Banar to Counsel furnishing additional discovery, (docs relating to 404(b) evidence: personal phone book; search warrant;...) (Lee, Tiffeny) (Entered: 11/28/2000) |
| 11/29/2000 | 101 | CALENDAR ENTRY as to Jose E Gonzalez, Carlos Arturo Ruiz, Alexis Fernandez-Vasquez; Case called before Judge John Gleeson on date of 11/29/00 for Status Conference. AUSA Banar; Dfts present w/attys in order given above B. Alan Seidler; Ismael Gonzalez; David Muraskin; Interpreter (Span): Estrellita Plested. Final pretrial conf 12/13/00 @ 3:00. Trial set for 12/18/00 @ 9:30. ESR: Henry Shapiro (Lee, Tiffeny) (Entered: 12/04/2000) |
| 11/29/2000 | | Deadline updated as to Jose E Gonzalez, Carlos Arturo Ruiz, Alexis Fernandez-Vasquez; Jury trial set for 9:30 on 12/18/00 Jose E Gonzalez, for Carlos Arturo Ruiz, for Alexis Fernandez-Vasquez before Judge John Gleeson . (Lee, Tiffeny) (Entered: 12/04/2000) |
| 11/30/2000 | 100 | LETTER dated 11/28/00 from AUSA Banar to Counsel furnishing additional discovery, 36 transcripts of tape recordings. (not attached) (Lee, Tiffeny) (Entered: 12/01/2000) |
| 12/01/2000 | 102 | Memorandum of Law in Response to the Government's Memorandum in Opposition. (Lee, Tiffeny) (Entered: 12/04/2000) |
| 12/05/2000 | 110 | CALENDAR ENTRY as to Carlos Arturo Ruiz; Case called before Magistrate Joan M. Azrack on date of 12/5/00 for Pleading. AUSA Banar; Dft in cust w/atty Ismael Gonzalez; Interpreter: Alfredo Garcia; Tape # 00/82 (177-1067). Dft pleads Guilty: Carlos Arturo Ruiz (11) count(s) 1s ; Sentencing set for 2/2/01 for Carlos Arturo Ruiz before Judge John Gleeson . (Lee, Tiffeny) (Entered: 12/08/2000) |
| 12/05/2000 | 111 | ORDER as to Carlos Arturo Ruiz referring application to enter a plea of guilt to Magistrate Azrack. (Signed by Judge John Gleeson, on 12/1/00) (Lee, Tiffeny) (Entered: 12/11/2000) |
| 12/06/2000 | 105 | LETTER dated 11/17/00 from AUSA Banar to Judge Gleeson moving in limine for the introduction of Rule 404(b) evidence against Carlos Ruiz and Alexis Fernandez. (Lee, Tiffeny) (Entered: 12/07/2000) |
| 12/06/2000 | 106 | LETTER dated 11/17/00 from AUSA Banar to Judge Gleeson estimating that the govt's case will take 8 days. (Lee, Tiffeny) (Entered: 12/07/2000) |

| 12/06/2000 | 112 | SUPERSEDING INDICTMENT as to Hernan Barona Dorado (1) count(s) 1ss, 2ss, 3ss, Jose E Gonzalez (5) count(s) 1ss, 3ss, 4ss, Carlos Arturo Ruiz (11) count(s) 1ss, 2ss, Alexis Fernandez-Vasquez (14) count(s) 1ss, 2ss . (Lee, Tiffeny) (Dessources, Jose). (Entered: 12/11/2000) |
|---|---|---|
| 12/08/2000 | 113 | TRANSCRIPT of Suppression Hearing before Judge Gleeson filed in case as to Jose E Gonzalez, Carlos Arturo Ruiz, Alexis Fernandez-Vasquez for dates of 10/13/00; Court Reporter: Diana Pereira (Lee, Tiffeny) (Entered: 12/11/2000) |
| 12/08/2000 | 114 | TRANSCRIPT of Suppression Hearing before Judge Gleeson filed in case as to Jose E Gonzalez, Carlos Arturo Ruiz for dates of 10/17/00; Court Reporter: Fred Guerino (Lee, Tiffeny) (Entered: 12/11/2000) |
| 12/08/2000 | 116 | TRANSCRIPT of Motion before Judge Gleeson filed in case as to Carlos Arturo Ruiz for dates of 10/27/00; Court Reporter: Anthony Mancuso (Lee, Tiffeny) (Entered: 12/11/2000) |
| 12/08/2000 | 128 | MOTION by Carlos Arturo Ruiz for order directing filing by gov't of Bill of Particulars; discovery; etc. (Lee, Tiffeny) (Entered: 12/13/2000) |
| 12/27/2000 | 129 | TRANSCRIPT of Guilty plea before Magistrate Azrack filed in case as to Carlos Arturo Ruiz for dates of 12/5/00 ; Court Transcription Service: Writer's Cramp, Inc. (Lee, Tiffeny) (Entered: 12/28/2000) |
| 01/03/2001 | 131 | INTER-OFFICE MEMO from Stephen L. Brighton, SUSPO to Judge Gleeson dated 12/27/00 regarding Delay in Presentence Investigation. (Lee, Tiffeny) (Entered: 01/04/2001) |
| 01/03/2001 | | ENDORSED ORDER as to Carlos Arturo Ruiz regarding [131-1] memorandum interoffice. If the dft (through his lawyer) fails to arrange for an interview w/i a reasonable time (2 weeks from today), the PSR should be prepared w/o the dft's input. (Signed by Judge John Gleeson , on 12/29/00) (Lee, Tiffeny) (Entered: 01/04/2001) |
| 02/21/2001 | 133 | LETTER dated 2/19/01 from Carlos Ruiz to the Clerk requesting a copy of his docket sheet. Pro Se responded. (Layne, Monique) (Entered: 02/22/2001) |
| 04/30/2001 | 136 | SEALED DOCUMENT: Letter dated 4/24/01. Placed in vault. (DiLorenzo, Krista) (Entered: 05/02/2001) |
| 05/15/2001 | 140 | LETTER dated 5/5/01 from Alan Nelson, Esq. to Judge Gleeson requesting a downward departure as to dft Miguel Medina. (Lee, Tiffeny) (Entered: 05/16/2001) |
| 05/18/2001 | 142 | LETTER dated 5/0/01 from Alan Nelson, Esq. to Judge Gleeson requesting adjournment of 5/25/01 sentencing to 6/1/01. (Lee, Tiffeny) (Entered: 05/21/2001) |
| 05/18/2001 | 143 | LETTER dated 5/14/01 from Alan Nelson, Esq. to Judge Gleeson requesting adjournment of 5/25/01 sentencing to 6/15/01. (Lee, Tiffeny) (Entered: 05/21/2001) |
| 05/21/2001 | | ENDORSED ORDER: Signed by Judge John Gleeson , on 5/17/01. The sentence is adjourned to 6.8.01 @ 2:00. So ordered. Signed Judge John Gleesion. on 5/17/01. (Lee, Tiffeny) (Entered: 05/21/2001) |
| 05/23/2001 | 147 | SEALED DOCUMENT/Letter placed in vault. (Lee, Tiffeny) (Entered: 05/23/2001) |
| 06/08/2001 | 156 | CALENDAR ENTRY as to Carlos Arturo Ruiz; Case called before Judge John Gleeson on date of 6/8/1 for Sentencing. AUSA Kowalski; Dft w/atty Ismael Gonzalez, Esq.; Span Int: Anita Silverion-Sworn; Court Reporter: Burt Sulzer. Receives 62 months imprisonment; 5 yrs s/r; $100 s/a. Dft to receive substance abuse treatment while incarcerated. Court recommends that dft be designated to a facility in NY area. No illegal |

| 05/19/2006 | 263 | Sealed Letter placed in vault as per order of Mag. Azrack. (Piper, Francine) (Entered: 05/19/2006) |
| 05/19/2006 | 264 | SEALED ENDORSED ORDER placed in vault as per order of Mag. Azrack. (Piper, Francine) (Entered: 05/19/2006) |

# EXHIBIT F

# TRANSCRIPT EXCERPTS (WITNESS RAMON MEJIA)

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
CASE No. 8:02 CR 329 T 17 EAT

2007 MAY 15 PM 4:49

UNITED STATES OF AMERICA

Plaintiff,

v.                                    July 11, 2006
                                      10:00 a.m.

JOAQUIN MARIO VALENCIA-TRUJILLO

        Defendant.

_____/

            TRANSCRIPT OF TRIAL PROCEEDING
    BEFORE THE HONORABLE ELIZABETH A. KOVACHEVICH
        UNITED STATES DISTRICT COURT JUDGE

APPEARANCES:

For the Government:      JOSEPH RUDDY
                         MARIA CHAPA-LOPEZ
                         Assistant U.S. Attorneys
                         U.S. Attorney's Office
                         400 North Tampa St.,
                         Ste. 3200
                         Tampa, FL 33602


For the Defendant:       MATTHEW FARMER, ESQ.
                         Farmer & Fitzgerald
                         708 E Jackson St
                         Tampa Florida 33602-5008

                         RONALD KURPIERS, ESQ.
                         Kurpiers Harland PA
                         696 1st Ave N Ste 304
                         St.Petersburg, FL 33701

        SANDRA K. LEE, RPR   OFFICIAL UNITED STATES COURT REPORTER

1    Q.    That was -- that's his full first name?

2    A.    Correct.

3    Q.    And was he affiliated with the North Valley

4    cartel?

5    A.    No, he's independent.  He used to work with

6    El Soldado -- Gonzalo Echeverry.

7    Q.    And was he your source of cocaine supply, as

8    well as the source of an organization in the United

9    States, to distribute that cocaine?

10    A.    Rigoberto would receive the kilos in New

11    York which I would send him from Cali -- that I

12    would find for him in Cali.

13    Q.    And what was your source of supply, let's

14    say beginning in May of 2000 until your arrest

15    September of 2004?

16    A.    June, July, I started working with an

17    individual by the name of Johnny Cano, alias

18    Santiago.

19    Q.    What year was that?  June, July of 2000?

20    A.    2000.

21         MR. FARMER:  All right.  We'll make this

22    1014.

23    BY MR. FARMER:

24    Q.    There were three people that you mentioned

25    yesterday; Vicky, Johnny Cano, and Rasguno.  Were

```
 1    those sources that -- of cocaine that you used
 2    beginning May of 2000, or did you use them before
 3    that at any point?
 4    A.    After, correct.  That's after May of 2000.
 5    Q.    Was the first time you used these people?
 6    A.    Yes, that's correct.
 7    Q.    Now, who is Vicky?  What does Vicky mean?
 8    A.    Vicky, representing Victor -- Victory, which
 9    is in North Valley.  And Cano is in North
10    Valley -- in the department of Valle -- the north
11    department of Valle.
12    Q.    And is Rasguno also in North Valley?
13    A.    Correct.
14    Q.    So you began developing sources of cocaine
15    supply that were all the North Valley cartel; is
16    that safe to say?
17    A.    That is correct.  Because after the first of
18    May, Enrique started commenting -- or made a
19    comment that I owed him money.  And therefore, all
20    the doors in Cali were closed to me, and I started
21    working with the North Valley cartel.
22    Q.    Okay.  Is that how you spell Valle there at
23    the bottom?
24    A.    Yes, that's correct.
25    Q.    Is that the word for valley?
```

1  either.

2  Q.    When was the first time you saw the chart,

3  sir?

4  A.    Yesterday.  Yesterday when the trial

5  started.

6  Q.    Sir, it's true that Vicky -- or Victoria and

7  Monica, according to your testimony today, would

8  not appear on the same chart; correct?

9  A.    With Monica, we are really talking about

10  Vicky, because during our conversations, she is

11  already asking about Vicky.

12       We were talking -- we were talking with

13  him -- that is, with Johnny Cano.  But up until

14  then, no business transaction had taken place.  I

15  suppose that Monica put him as an example in the

16  letter or document of the people who were the

17  suppliers.

18  Q.    I want to be very clear with you, sir.  Your

19  testimony today is that your organization received

20  no cocaine from Victoria before May 1st, 2000;

21  correct?

22  A.    Correct.

23  Q.    And it's correct that Vicky could not have

24  given Monica Velilla any cocaine; correct?

25  A.    Correct.

1    mine.  And they were Ramiro Rojas.  It was Litro,
2    and his first name was Ramiro.  I don't know his
3    last name.  It was Rodrigo Silva, Enrique
4    Valencia.
5           MR. NIEMIERZYCKI:  Interpreter would
6    like to make a correction.  He was not an
7    attorney.  His alias was the attorney.
8    BY MR. FARMER:
9    Q.     Thank you.  Who else?
10   A.     Who else?  Those are the ones I remember as
11   the sources of --
12   Q.     After that point, other sources became
13   involved, including Jairo Lopez, Don Roque; right?
14   A.     Juan Carlos Velazco.
15   Q.     Okay.  Thank you.  Before May 1st, 2000?
16   A.     Correct.
17   Q.     Now, after -- were all of these Rs still
18   your sources after May 1st, 2000?
19   A.     No, because Cali was already burned for me.
20   Q.     So none of these Rs -- well, Mr. Lopez had
21   to be a source after May 1st; right?
22   A.     After May, correct.
23   Q.     And what were your other sources after
24   May 1st of 2000?  Victoria --
25   A.     Johnny Cano, Ramon Quintero, Patemuro --

1    Q.    I'll have to get a spelling.

2    A.    Okay.  Johnny Cano.  Johnny, and then Cano,

3    C-A-N-O.  Ramon Quintero.  Ramon, and then

4    Quintero, Q-U-I-N-T-E-R-O.  We have another

5    individual by the nickname of Patemuro,

6    P-A-T-E-M-U-R-O, whose real name is Carlos Patino,

7    P-A-T-I-N -- with a little squiggle -- O.  And our

8    last person is Leyner Valencia.  L-E-Y-N-E-R

9    Valencia, V-A-L-E-N-C-I-A.

10        Another individual by the name of Miguel

11   Solano, S-O-L-A-N-O.  And Jose Luis Quintana,

12   Q-U-I-N-T-A-N-A.  His brother, Jaime Quintana,

13   Q-U-I-N-T-A-N-A, AKA -- alias El Negro.  E-L,

14   N-E-G-R-O, or the black one.

15        Of all of these people -- these people's

16   names were all on the diskette that I handed to

17   the DEA agent, Tom Stommell, S-T-O-M-M-E-L-L, in

18   Miami as part of my collaboration.

19        Where there is a very complete, full detail

20   of name, amount, date, cash or money,

21   distribution, payments, all of it is contained in

22   that diskette.

23   Q.    And who was El Negro?  I missed that one.

24   Oh, the top one?

25   A.    The El Negro -- El Negro is called that

SANDRA K. LEE, RPR  OFFICIAL UNITED STATES COURT REPORTER

Brady

1    all?

2    A.     No, he was a client, a client.

3    Q.     And Leyner Valencia, this was not related to

4    the Valencia-Trujillo family?

5    A.     No, because these Valencias are from Sarzal,

6    Valle.  S-A-R-Z-A-L, state of Valle, V-A-L-L-E.

7    Q.     Again, affiliated with the North Valley

8    cartel?

9    A.     Correct.

10   Q.     Okay.  Hugo Mazuera was part of the Monica

11   Velilla organization before the May 1st, 2000

12   arrest; correct?

13   A.     That's correct.

14   Q.     And he was responsible for transporting

15   cocaine from Miami to New York using I-75,

16   et cetera?

17   A.     One -- one of the ones who transported.

18   Q.     And was his alias also El Negro?

19   A.     El Nero, N-E-R-O, without the G.

20   Q.     Okay.  We'll call this 1016.  So it was both

21   El Negro and El Nero?

22   A.     Cholao would call him El Nero, because he

23   was kind of like the farmer type when he spoke.

24   Q.     What does Nero mean?

25   A.     The same.  Just that Nero is that he's

# EXHIBIT G

## PRINTOUT OF SPREADSHEET ON DISKETTE
## PROVIDED TO D.E.A. BY WITNESS RAMON MEJIA

(AKA SANTIAGO)

**CXC SANTI**    JHONY CANO : RASGUÑO ACCT.

| Fecha | Relacion | Debe | Haber | Saldo |
|-------|----------|------|-------|-------|
| 03/24/00 | Entrega 350 x 22 | $ 7,700,000 | | $ 7,700,000 |
| 03/25/00 | Abono a Muelon | | $ 500,000 | $ 7,200,000 |
| 03/26/00 | Abono a Prima | | $ 500,000 | $ 6,700,000 |
| 03/27/00 | Abono a Muelon | | $ 300,000 | $ 6,400,000 |
| 03/27/00 | Abono a Muelon | | $ 300,000 | $ 6,100,000 |
| 03/28/00 | Abono a Muelon | | $ 300,000 | $ 5,800,000 |
| 03/28/00 | Abono a Muelon | | $ 200,000 | $ 5,600,000 |
| 03/29/00 | Descuento 40 x 500 | | $ 20,000 | $ 5,580,000 |
| 03/30/00 | Abono a Fredy | | $ 500,000 | $ 5,080,000 |
| 03/31/00 | Abono a Prima | | $ 500,000 | $ 4,580,000 |
| 04/01/00 | Abono a Muelas | | $ 500,000 | $ 4,080,000 |
| 04/02/00 | Abono a Chica -Primo | | $ 250,000 | $ 3,830,000 |
| 04/02/00 | Abono a Juli-Tony | | $ 250,000 | $ 3,580,000 |
| 04/03/00 | Abono a Alex | | $ 500,000 | $ 3,080,000 |
| 04/05/00 | Abono a Chica Primo | | $ 250,000 | $ 2,830,000 |
| 04/05/00 | Abono a Muelon | | $ 200,000 | $ 2,630,000 |
| 04/05/00 | Abono a Jairo 909 | | $ 500,000 | $ 2,130,000 |
| 04/06/00 | Abono a Prima | | $ 500,000 | $ 1,630,000 |
| 04/10/00 | Abona a Muelon | | $ 400,000 | $ 1,230,000 |
| 04/10/00 | Abona a Chica Primo | | $ 250,000 | $ 980,000 |
| 04/11/00 | Abono a Ramiro | | $ 300,000 | $ 680,000 |
| 04/14/00 | Abona a Ramiro | | $ 130,000 | $ 550,000 |
| 04/15/00 | Abono a Ramiro | | $ 550,000 | $ - |
| 05/01/00 | Saldo anterior | $ 946,454 | | $ 946,454 |
| 05/10/00 | Entrega 300x21 | $ 6,300,000 | | $ 7,246,454 |
| 05/10/00 | Abono a Tocayo Caleño | | $ 705,000 | $ 6,541,454 |

# EXHIBIT H

# REPORT BY D.E.A. AGENT STOMMEL OF MAY 1, 2006 INTERVIEW OF WITNESS RAMON MEJIA

Ramon Orozco ( O)  5.1.06 in Miami  --with DEA Tim Stommel
      -Viola

O came into the U.S. in Sept., 2005 after extradition from Colombia. He is 44 years old and has family living in ████ He is expected to testify in the upcoming Tampa trial against Mario Valencia. The only Norte Valle trafficker from the NY indictment that O did business with was Jhon Cano. O knew of and met Rasguno but never had any direct deals with him. O met Mechas at Combita. In 1998-99 O began working with Cano aka: Santiago to O. O was essentially a Colombian based cocaine broker. Routinely, a trafficker would contact O and tell O that he/she had quantities of cocaine in a particular American city. O would take possession of the cocaine, sell it through his contacts in the states and launder the money back to the traffickers in Colombia. O worked for various traffickers in this capacity, not only Cano.

O met Cano through the girlfriend of "El Paisano" who worked as a killer for various Norte Valle traffickers. El Paisano is dead, having himself been murdered. The first Cano meeting in 1998 was in Pance, an area of Cali, at O's house. Cano had 100 kilos in Houston which he sold to O. O had 50 of the kilos sold in NYC through Hernan Barona Dorada at $21,500 per kilo. The other 50 were sold in Houston at $13,500 per kilo.

Over the time period 1998-2003 O met with and spoke with Cano countless times. Some of these meetings took place at a 4 story parking garage in Cartago owned by Rasguno. At this location both Cano and Rasguno had their offices. Other meetings took place at apartments situated along Rio La Viaja. O would call Cano or visa versa and different drivers would be sent by Cano to pick O up at a pre-designated location. They would then escort O to meet Cano.

The last deal with Cano was in Feb./March, 2003. The following is a breakdown of all the transactions between Cano and O between 2000-2003. During 1998-99 O did other deals with Cano but no longer has the records.

              March , 2000---300 kilos
              May , 2000—350 kilos
              May, 2000---300 kilos
              July , 2000—54 kilos

              Oct., 2001—52 kilos

              April/May, 2002—131 kilos
              June, 2002 ----130 kilos
              June, 2002 ----70 kilos
              July, 2002--- 200 kilos
              Aug., 2002--–72 kilos
              Aug., 2002—170 kilos
              Oct., 2002---170 kilos
              Oct., 2002 – 70 kilos

Government
Exhibit
3500-ROM-4
CR-02-1188
(DEARIE, Ch..)

Oct., 2002—43 kilos
Oct., 2002—215 kilos
Oct. 2002-- 119 kilos
Nov. 2002---177 kilos

Feb 2003--186 kilos
March, 2003--68 kilos          The total is 2,877 kilos.

Cano told O this- "that what came from him was from Hernando" and told him to take special care as it belonged to El Patron. All the loads were negotiated with Cano.

As the monies were collected from the sales of the cocaine O would inform Cano. Cano, in turn, would give O the beeper numbers and codes for the individuals who were to receive the monies in the appropriate city, usually that city being NYC. O would pass these numbers on to his workers and they would arrange the date and time to deliver the monies. All the monies were laundered thru pickups to the best of O's knowledge. O would call Cano immediately after being informed that the pick up had taken place. O would take possession of the cocaine in other cities than NYC on many occasions but he wanted to sell it in NYC because his best contact ( Barona Dorada ) was there and the price was higher than in other cities due to the demand. Much of the cocaine he sold for Cano was picked up in Miami and driven to NYC for sale.

O did one deal with Patemuro in combination with Don Roque ( Jairo Lopez) and Ramon Quintero. This was for 1770 kilos. 770 belonged to Patemuro; the other 1000 to the other 2. On 9/11/2001 2 seizures, one of 69 kilos in Georgia and another of 60 kilos in Delaware occurred. This 129 kilos were part of the 1770 shipment. O was held responsible for the loss. He owed about $3,000,000. In Dec., 2002 he was kidnapped by Pina, the head of security for Quintero for this unpaid debt. He was held for 97 days. He paid off about half the debt during that time and was released. in Feb., 2003.

O said that Patemuro took possession of the hotel San Jose, which formerly belonged to O, as a partial payment for this debt. Don Ruben is right hand man to Patemuro. He is the individual who acted for Patemuro in this 770-kilo deal. O was shown a photo of Patemuro that he did not recognize.

O met and worked with Orlando Henao in the mid to late 1980's. O met him thru Orlando's wife, Piedad. He knows Arcangel Henao. O moved and lived in NYC receiving 20-50 kilo shipments in the NY area from the Henaos. O also worked for the Rodriguez-Orejuela brothers during 1989-1993. O was arrested in NY and served 3 years on a State conspiracy charge during this time period.

O mentioned that in federal jail in Alabama is Miguel LNU who worked for Cano. O will try to remember his last name. O does not know if Miguel is cooperating.

# EXHIBIT I

# EXCERPTS OF JULY 17, 2006 TRIAL TESTIMONY OF U.S. CUSTOMS AGENT KANE

FILED

1               IN THE UNITED STATES DISTRICT COURT
                FOR THE MIDDLE DISTRICT OF FLORIDA
2                   CASE No. 8:02 CR 329 T 17 EAPH 4:50

2007 MAY 15
3                                        DISTRICT COURT
                                         FLORIDA
4                                        DA
      UNITED STATES OF AMERICA
5                                                KANE

6               Plaintiff,              MAURIN Craig
      v.                        July 17, 2006
7                               10:00 a.m. JUStO JAy

8     JOAQUIN MARIO VALENCIA-TRUJILLO

9               Defendant.

10    _____/

11              TRANSCRIPT OF TRIAL PROCEEDING
          BEFORE THE HONORABLE ELIZABETH A. KOVACHEVICH
12              UNITED STATES DISTRICT COURT JUDGE

13
      APPEARANCES:
14
      For the Government:     JOSEPH RUDDY
15                            MARIA CHAPA-LOPEZ
                              Assistant U.S. Attorneys
16                            U.S. Attorney's Office
                              400 North Tampa St.,
17                            Ste. 3200
                              Tampa, FL 33602
18

19
      For the Defendant:      MATTHEW FARMER, ESQ.
20                            Farmer & Fitzgerald
                              708 E Jackson St.
21                            Tampa Florida 33602-5008

22                            RONALD KURPIERS, ESQ.
                              Kurpiers Harland PA
23                            696 1st Ave N Ste 304
                              St.Petersburg, FL 33701
24

25


      SANDRA K. LEE, RPR  OFFICIAL UNITED STATES COURT REPORTER

1   if anything, happened next -- well, did the fiesta

2   ever occur?

3   A.     Yes.

4   Q.     When did that occur?

5   A.     Well, Monica was holding a beeper that she

6   had been instructed to hold, and she was advised

7   to look for code 55.

8   Q.     Okay.  And did, at some point, code 55 show

9   up on the beeper?

10  A.     Yes.

11  Q.     Do you recall what date that happened?

12  A.     I believe that was April 30th.

13  Q.     Okay.  And what happened as a result of that

14  beeper code 55 coming in?

15  A.     Monica placed a call to the number in the

16  beeper, and she spoke to a male Hispanic.

17  Q.     Okay.  And what, if anything, happened after

18  she spoke to this individual on the phone?

19  A.     They arranged a meeting later that day at

20  the -- at a billiards hall in Astoria, Queens on

21  Steinway Street.

22  Q.     Okay.  And did that meeting occur?

23  A.     Yes.

24  Q.     Who was present at that meeting?

25  A.     Monica, the male Hispanic we later

1   identified as Gustavo Martinez.

2   Q.   Okay.  And you people conducting

3   surveillance still?

4   A.   Correct.

5   Q.   Okay.  About what time of the day was this

6   on April 30th?

7   A.   I would say some time mid-afternoon.

8   Q.   Okay.  And what happened at this meeting

9   that you saw?

10   A.   Well, this is a meeting where Monica was

11   going to arrange picking up the cocaine from

12   Gustavo Martinez.

13   Q.   Okay.  What was the expectation that the

14   load would be?

15   A.   She was expecting about 900 kilos.

16   Q.   Okay.  And what was -- what was the actual

17   amount that was to be delivered?

18   A.   Well, Gustavo Martinez told her that he only

19   had 144 for her.

20   Q.   Okay.  So then what happened?

21   A.   Well, she was a little shocked by that

22   number.  He pulled out a piece of paper.  He

23   showed it to her.  It had a list of names on it

24   and a total of about 1,000 kilos on that list.

25   Q.   All right.  So then what happened next?

```
 1    A.      They arranged -- or Gustavo Martinez asked
 2    for her to bring a van or a truck so that he could
 3    load it up for her, and to leave it across the
 4    street at the movie theater.
 5    Q.      Did you make those arrangements and get a
 6    U-Haul van?
 7    A.      Yes.
 8    Q.      What exactly -- what exactly did you do with
 9    the U-Haul van and make -- to make these
10    arrangements?
11    A.      With, we actually had rented the van about
12    five days prior in anticipation of this delivery.
13    Q.      All right.
14    A.      Monica had reached out to one of Hernan's
15    workers, and he rented the van.  So we reached out
16    to him, and he brought the van later that night.
17    About 8 o'clock that night, he brought it over to
18    that location.
19    Q.      What location was that, again?
20    A.      It was the movie theater across from the
21    billiard hall on Steinway.
22    Q.      Okay.  And what, if anything, did you see
23    or -- that evening?
24    A.      Well, we initiated surveillance.  We had the
25    helicopter up.  And we observed Gustavo Martinez
```

1    meet with an individual later identified as Jairo

2    Marulanda.  He had driven the U-Haul over here --

3    over to that location.  Gustavo Martinez got into

4    the driver seat of the U-Haul.  Marulanda got into

5    the passenger seat, and Monica followed them in

6    her car.

7    Q.     Jairo, J-A-I-R-O.  Marulanda,

8    M-A-R-U-L-A-N-D-A.  So Monica's following them.

9    And what time of the day is this where's she

10    following them?

11    A.     I believe they agreed to meet at about

12    8 o'clock.  I think by the time Marulanda got

13    there, it might have been 8:30, so now we're going

14    towards 9 o'clock as we're driving away.

15    Q.     In the evening?

16    A.     Yes.

17    Q.     All right.  And you're driving away.  And

18    where does this go?

19    A.     They drive the van into Brooklyn and

20    eventually pulls over.  Marulanda gets out of the

21    passenger side and gets into Monica's car, and

22    they depart the area.

23    Q.     Okay.  And where do they go?

24    A.    Well, they dropped -- we initiated -- we

25    kept surveillance on the U-Haul, and we also had a

1    cover team cover Monica.  We didn't want to let

2    her out of our presence, so we followed her off

3    the set.

4    Q.    So.  So what, if anything, was observed

5    happening where the U-Haul was?

6    A.    Well, Gustavo Martinez then drove to the

7    Green Point industrial area in Brooklyn.  He

8    parked the car in a commercial area, a lot of

9    warehouses, commercial trucks, U-Hauls.  He parked

10   it on one of those blocks, and he walked away from

11   the U-Haul.

12   Q.    Okay.  And this is about 10 o'clock at night

13   now, approximately?

14   A.    Yes.

15   Q.    Did you continue to maintain surveillance on

16   the U-Haul?

17   A.    We kept surveillance on the U-Haul, and we

18   also followed Gustavo Martinez.

19   Q.    Okay.  And what, if anything, did you see?

20   A.    Well, he walked a few blocks away.  He got

21   into a car, and he drove back into Queens.  And he

22   went into an apartment building on, I believe,

23   36th Street.

24   Q.    Okay.  And what, if anything, did you see

25   happening where the U-Haul was?

1    A.    Well, we maintained surveillance all through

2    the night.  Probably sometime around midnight, we

3    observed a green Montero circling the area

4    probably four or five times.

5    Q.    All right.  And what, if anything, did you

6    see this Montero do, other than circling?

7    A.    Well, the Montero was circling.  We could

8    definitely see that there were at least two male

9    Hispanics in it.  One appeared to be on the cell

10   phone.  We were able to copy down the license

11   plate.

12   Q.    Okay.  And what, if anything, happened next?

13   A.    Well, we waited through the night.  At about

14   5:45 in the morning, the team that was on Gustavo

15   Martinez observed him come out of the apartment

16   building that we went into the night before.

17   Q.    Okay.  And where did he go?

18   A.    Well, he met -- he met another male Hispanic

19   on the corner.  They got into a car that was

20   registered to Carlos Ruiz, and they departed the

21   area.

22   Q.    And where'd they go?

23   A.    We didn't follow them.  We just -- we stayed

24   on the car that Martinez had driven to that

25   location.

1    Q.    All right.  So what, if anything, did you

2    see occur next?

3    A.    Well, about 15 minutes later, Martinez

4    showed up again at that location.  He got into the

5    car that we had surveilled him in the night

6    before, and he drove back to the Green Point

7    industrial center.

8    Q.    And what time is this?

9    A.    That has to be about 6 o'clock.  So he's

10   probably arriving sometime between 6:00 and 6:30.

11   Q.    Okay.  So then what happened next?

12   A.    He parked his car a couple blocks away from

13   the Green Point industrial center, and he walked

14   into the warehouse.

15   Q.    All right.  And what, if anything -- do you

16   know how long he was in the warehouse?

17   A.    Well, I set up surveillance on his car.  We

18   had agents set up in the area.  I would say within

19   20 minutes or half an hour, I observed the green

20   Montero from the night before being parked behind

21   Martinez' car.

22   Q.    All right.  And what else did you see?

23   A.    Then I saw Martinez actually get out of the

24   Montero, which was a little shocking.

25   Q.    All right.  So Martinez gets out of the

1    green Montero that's parked behind his own car?

2    A.    Correct.

3    Q.    All right.  So then what happened next?

4    A.    Well, I noted that the Montero looked

5    weighted in the back.  He walked away from the

6    vehicle back towards the Green Point industrial

7    center, and he was on the cell phone.

8    Q.    Okay.  And then based on the fact that you

9    saw that the Montero was weighted down, what, if

10    anything, did you and your task force do?

11    A.    Well, I notified the other agents over the

12    radio.  At about the same time, I noticed -- I was

13    sitting next to a fire hydrant, and I was low down

14    in my seat so I couldn't be seen.  And I noticed a

15    car pull up next to me, double parked, a male

16    Hispanic, and I observed that he was observing the

17    Montero as I was.

18    Q.    Then what happened?

19    A.    I let the team know.  That individual we

20    later identified as Carlos Echeverry.

21    Q.    Okay.  So did Carlos Echeverry,

22    E-C-H-E-V-E-R-R-Y -- what, if anything, did you see

23    Carlos Echeverry do besides double park next to

24    you?

25    A.    Well, he pulled away at one point.  He must

48

1    have gone around the block.  And he came back up

2    and parked next to me again.

3    Q.    All right.

4    A.    About that time, I observed a well dressed

5    male Hispanic walking over to the green Montero.

6    He was wearing a suit and tie.  He opened the rear

7    door, he hung his jacket in the back, and he got

8    into the driver's set.

9    Q.    All right.  And then what did he -- then

10    what happened next?

11    A.    Then I observed an Altima pull up next to

12    the green Montero.  I observed a little

13    acknowledgement between the two drivers.  The

14    Montero pulled out, followed by the Altima.

15    Q.    Okay.  And where did they go?

16    A.    Well, they proceeded down the block.  And

17    then I noticed Carlos Echeverry, who was sitting

18    next to me, shoot across the intersection and

19    begin following those two vehicles.

20    Q.    All right.  So then what happens next?

21    A.    Well, we suspect that there's something in

22    the Montero.  I pull out, following Carlos

23    Echeverry.  We designate a team to follow the

24    Montero and the Altima off the set.  When they get

25    to the next light, which was squaring the block

SANDRA K. LEE, RPR   OFFICIAL UNITED STATES COURT REPORTER

```
 1    coming back to McGinniss, the Montero and the
 2    Altima make a left turn, heading towards the
 3    BQE --
 4    Q.    The BQE being the --
 5    A.    The Brooklyn Queens Expressway.
 6    Q.    All right.
 7    A.    And Echeverry makes a right turn, heading
 8    back towards Queens.
 9    Q.    All right.  So then what happened next to
10    the Montero?
11    A.    Well, I maintained surveillance on
12    Echeverry, and the rest of the team follows the
13    Montero.  Eventually I'm notified that they found
14    drugs in the Montero.
15    Q.    All right.  So then -- this is still on May
16    30th -- or --
17    A.    May 1st.
18    Q.    We're on May 1st now?
19    A.    Yes.
20    Q.    All right.  What, if anything, happens the
21    rest of the day?
22    A.    Well, immediately I placed Carlos -- Carlos
23    Echeverry under arrest.  I shoot back to the
24    warehouse.  I have him transported back to our
25    office.
```

1          At the same time, Gustavo Martinez is

2     observed coming out of the warehouse, getting into

3     the U-Haul that he parked the night before, and

4     driving that into the warehouse.

5     Q.     Okay.  And this is the warehouse that's

6     located in Green Point?

7     A.     Green Point industrial center.

8     Q.     Green Point industrial center.  Okay.  So

9     then what do you observe happening with the U-Haul?

10    A.     Just before I arrived, he had backed out of

11    the warehouse.  The agents and detectives stopped

12    him, and they found additional cocaine in the

13    U-Haul.

14    Q.     Okay.  Do you know how much cocaine was

15    found in the U-Haul?

16    A.     I believe 133 kilograms.

17    Q.     Okay.  Do you know how much was found in the

18    Montero?

19    A.     293 kilograms.

20    Q.     Okay.  So those vehicles are seized.  So

21    what, if anything, happens after the seizure of

22    those vehicles?

23    A.     Well, I'm advised by my partner that Gustavo

24    Martinez is cooperating, and he told my partner

25    that there was additional cocaine --

# EXHIBIT J

## AUSA MARIA CHAPA LOPEZ'S LETTER ON BEHALF OF WITNESS RAMON MEJIA

*Jerret* OO2293



2110 First Street, Suite 3-137
Fort Myers, Florida 33901
239/461-2200
239/461-2219 (Fax)

207 NW 2nd Street
Room 118
Ocala, Florida 34475
352/629-0053
352/671-6743 (Fax)

**U.S. Department of Justice**
*United States Attorney*
*Middle District of Florida*

*Main Office*
*400 North Tampa Street, Suite 3200*
*Tampa, Florida 33602*
*813/274-6000*
*813/274-6358 (Fax)*

300 N. Hogan Street, Room 700
Jacksonville, Florida 32202
904/301-6300
904/301-6310 (Fax)

501 West Church Street, Suite 300
Orlando, Florida 32805
407/648-7500
407/648-7643 (Fax)

*Reply to:   Tampa, FL*

December 30, 2008

Eric E. Morales
Assistant United States Attorney
United States Attorney's Office
99 NE 4th Street
Miami, Florida 33132

Re:   Ramon Orozco-Mejia

Dear Mr. Morales:

I understand that Ramon Orozco-Mejia recently testified in the case of <u>United States v. Ivan Gonzalez-Bejarano</u>. As AUSA Terry Furr, of this office may have told you, Gonzalez-Bejarano was a major drug trafficker who operated in the United States and Colombia as a lieutenant of the Mario Valencia-Trujillo Drug Trafficking Organization (DTO). In 2006, I prosecuted Joaquin Mario Valencia-Trujillo with the assistance of Ramon Orozco-Mejia. Immediately after his extradition to the United States, Ramon Orozco-Mejia agreed to assist the Middle District of Florida by testifying in the Valencia-Trujillo trial. His assistance to this office in the prosecution of former CPOT Joaquin Mario Valencia-Trujillo was invaluable. Valencia-Trujillo was extradited from Colombia to the Middle District of Florida in March 2004, went to trial in Tampa, Florida on July 5, 2006, on charges of Engaging in a Continuing Criminal Enterprise as well as Narcotics and Money Laundering Conspiracies. Valencia-Trujillo was convicted on all counts on October 25, 2006. On February 1, 2007, Valencia-Trujillo was sentenced to 40 years imprisonment. Ramon Orozco-Mejia's assistance was instrumental in accomplishing these results.

Government
Exhibit

3500-ROM-25
CR-02-1188
(DEARIE, Ch. J.)

As you are aware, Ramon Orozco was extradited to your District from Colombia to answer to charges arising out of your District. In the spring of 2006, myself and Special Agent Jeff Adams had the opportunity to interview him in Miami, Florida about Joaquin Mario Valencia-Trujillo. Upon completion of the initial interview, it was apparent that he possessed significant information about Valencia-Trujillo and would make a compelling witness for the government. Specifically, Orozco-Mejia described post-1997 meetings he had with members of the Valencia DTO, specifically several of his lieutenants. He identified himself in phone conversations he had with other members of the Valencia DTO working in New York. The conversations occurred in 2001 and involved the planning of large shipments of cocaine owned by the Valencia-Trujillo DTO. The shipments were to go from Colombia to Florida and New York. Not only were the admissions consistent with independent testimony from other co-conspirators, but his account of what occurred went unchallenged by the defense. He also testified that during 2001 he suffered lost seizures of cocaine he had obtained from Valencia-Trujillo's organization. Ultimately, these seizures caused Orozco-Mejia to not be able to fully repay the losses so he was kidnaped by members of the Valencia-Trujillo DTO until he turned over several of his properties in repayment. He was in captivity for 97 days.

After the conviction of Valencia-Trujillo of all charges, the foreman of the jury contacted this office and indicated that the jury found Ramon Orozco-Mejia entirely credible and the most important witness the government presented during the four-month trial. He further indicated that the jury relied heavily upon Orozco-Mejia's testimony in reaching their verdict.

Pending the Valencia-Trujillo trial Orozco-Mejia was brought to the Middle District of Florida and for his safety was housed in the Special Housing Unit of the Hillsborough County Jail in 24-hour lockdown for approximately three weeks. Despite this inconvenience he remained positive and eager to assist. Throughout my contact with him, Ramon Orozco-Mejia was completely candid, forthright and consistent in his account of the events to which he ultimately testified.

Based upon the aforementioned, I would request that you and your Office favorably consider the significant cooperation provided by Ramon Orozco-Mejia as substantial assistance in support of a sentence reduction. I leave the extent of any recommended departure to your sound judgement and Office policy. No promises were made to him for his cooperation except that I would make the nature and extent of that cooperation known to you. In support of this letter, I stand ready to appear at a Rule 35 hearing on behalf Mr. Orozco in the event you deem it necessary.

Eric E. Morales
December 30, 2008
Page Three

Should you have questions please feel free to contact me at (813) 274-6353.


Sincerely,

A. BRIAN ALBRITTON
United States Attorney

By:

MARIA CHAPA LOPEZ
Assistant United States Attorney


cc:    Robert Franklin Dunlap, Esq.
Suite 725
2601 S. Bayshore Drive
Miami, Florida 33133
Attorney for Ramon Orozco-Mejia